157 P.3d 1120 (2007)
SOUTHERN STAR CENTRAL GAS PIPELINE, INC., Appellant,
v.
Gordon and Jennifer CUNNING, Appellees,
v.
Michael Ronnebaum, Appellee.
No. 96,103.
Court of Appeals of Kansas.
May 18, 2007.
*1122 Teresa J. James and Teresa L. Mah, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, for appellant.
James P. Colgan, of Colgan Law Firm LLC, of Kansas City, and Gary A. Nelson, of Leavenworth, for appellees.
Before PIERRON, P.J., MALONE and BUSER, JJ.
MALONE, J.
Southern Star Central Gas Pipeline, Inc. (Southern Star), appeals the district court's decision denying its petition for possession, ejectment, and trespass based upon an alleged encroachment on Southern Star's pipeline easement across land owned by Gordon and Jennifer Cunning. Southern Star claims the district court erred by not enforcing Southern Star's easement rights and by not requiring the Cunnings to remove a garage which had been built near the pipeline. We disagree and affirm.
Southern Star owns and operates interstate natural gas pipelines and related facilities in five states, including Kansas. The Cunnings own property in Leavenworth County, Kansas (the property). In July 1959, Southern Star's predecessor was granted an easement across the property by the people who owned it at that time. The easement was recorded on July 11, 1959, in the Leavenworth County Register of Deeds office. In 1959 or 1960, Southern Star installed an 8-inch natural gas pipeline across the property, buried 36 inches below the surface. The pipeline has been in operation since installation.
Specifically, the easement conveyed to Southern Star a right-of-way on the property:
"to construct, reconstruct, renew, operate, maintain, inspect, alter, replace, repair, and remove a pipeline, and for the transportation of gas, oil, petroleum, or any of its products, water and other substances, and such drips, valves, fittings, meters and other equipment and appurtenances as may be necessary or convenient for such operations . . . together with the right of ingress and egress at convenient points for *1123 such purposes; together with all rights necessary for the convenient enjoyment of the privileges herein granted." (Emphasis added.)
Southern Star's easement is a blanket easement that does not have specified dimensions as it crosses the property. In other words, the easement does not specify that it covers a certain width on each side of the pipeline. The easement simply states that Southern Star is granted a right-of-way on the property sufficient to operate and maintain its pipeline, together with all rights necessary for the convenient enjoyment of this privilege.
In 2003, Michael Ronnebaum acquired the property. In August 2003, he obtained a building permit to construct an oversized two-car garage on the property. At trial, Ronnebaum testified that he staked the proposed location of the garage and then placed a call to Kansas One-Call so that the underground pipeline could be marked before he commenced construction. Kansas One-Call is a business which provides a single point of contact for notifying utility and pipeline companies of construction or excavation that might affect underground cables or pipelines. Ronnebaum testified that after he placed the call, someone came out and marked the location of the pipeline. Ronnebaum testified that the markers indicated the edge of his proposed garage would be located over the top of the pipeline, so he decided to change the location of the garage. Ronnebaum ultimately built the garage adjacent to the pipeline, with a 41-inch clearance between the pipeline and the 27-foot north wall of the garage. Ronnebaum admitted that he never spoke to a Southern Star representative about building the garage on the property.
The Cunnings purchased the property from Ronnebaum in March 2004. The garage was already constructed at that time, but it had no electricity. The Cunnings called Kansas One-Call concerning their anticipated installation of electricity to the garage, and Kansas One-Call notified Southern Star to mark its pipeline. According to Southern Star, it did not become aware of the garage until that time.
On February 18, 2005, Southern Star filed a petition against the Cunnings for possession and ejectment pursuant to K.S.A. 60-1001. The petition sought to enforce Southern Star's easement rights and demanded the garage be removed because it was within 50 feet of Southern Star's pipeline. The Cunnings answered and named Ronnebaum as a third-party defendant, claiming Ronnebaum was liable for the cost of moving the garage if the Cunnings were ordered to do so. Southern Star later filed an amended petition which alleged the garage interfered with Southern Star's easement rights because the garage was within 33 feet of the pipeline. The amended petition also alleged a claim for trespass.
The case proceeded to a bench trial. Gary Hines, an engineer and Southern Star district manager, testified as an expert regarding industry standards for natural gas pipelines. Hines testified that the pipeline crossing the property was a high pressure natural gas pipeline with a maximum allowable operating pressure of 150 pounds. He testified that according to Southern Star's company policy, an easement width of 33 feet on each side of the pipeline is necessary for proper maintenance. Hines also testified he had safety concerns about putting someone down in a ditch to repair the pipeline unless the sides were graded at a 45-degree angle, and he believed that would not be possible with the garage only 41 inches away. On cross-examination, Hines testified he was unsure if a backhoe could straddle the pipeline so close to the garage. He indicated it might be possible to excavate the pipeline with a backhoe off to one side, but he did not believe this was the most efficient way to excavate. He also admitted that if the excavated dirt could be moved more than 33 feet away on the working side, then the pipeline could be excavated with just 41 inches on one side.
Gordon Cunning testified that it would cost about $20,000 to move or rebuild the garage including the concrete foundation. David Mance, owner of an excavating company, testified as the Cunnings' first expert witness. Mance testified he could use small, maneuverable equipment to excavate the pipeline *1124 along the north wall of the garage. He indicated it would only take an additional 30 minutes to move all the dirt off to one side of the garage. He testified there would be no safety concerns or issues with sloping the sides of a ditch that was only 3 to 4-feet deep. However, on cross-examination, Mance admitted he had not completed the evaluation and qualification process required under the federal regulations for excavating a natural gas pipeline.
Edward McClure, Jennifer Cunning's father, was also allowed to testify as an expert witness. McClure testified that he is an owner and operator of heavy equipment and could dig out a pipeline such as the one on the Cunnings' property. He testified there would be no safety concerns with sloping the sides of the ditch. McClure also admitted that he had not completed the evaluation and qualification process required under federal regulations for excavating a natural gas pipeline.
After hearing the evidence, the district court found that Southern Star had failed to prove it was more probably true than not that the garage constituted an unreasonable interference with Southern Star's easement. The district court also found the encroachment to be slight compared with the cost of removing the garage. Accordingly, the district court denied Southern Star's claim for relief and granted judgment in favor of the Cunnings. Southern Star timely appeals.
Southern Star claims the district court erred in failing to define the easement as encompassing 33 feet on each side of the pipeline. Southern Star also claims the district court erred in finding the garage did not create an unreasonable interference with Southern Star's easement and in failing to require relocation of the garage due to safety concerns. Finally, Southern Star claims the district court erred in balancing the equities after finding the garage encroached on the easement.
We have a mixed standard of review. When a district court makes findings of fact and conclusions of law, an appellate court reviews the findings of fact to determine whether they are supported by substantial competent evidence and whether they are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. U.S.D. No. 233 v. Kansas Ass'n of American Educators, 275 Kan. 313, 318, 64 P.3d 372 (2003). Where the findings are so supported, they will not be disturbed on appeal even though there may have been contrary evidence which, if believed, would have supported different findings. Haag v. Dry Basement, Inc., 11 Kan.App.2d 649, 653, 732 P.2d 392, rev. denied 241 Kan. 838 (1987). An appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas, 275 Kan. 763, 775, 69 P.3d 1087 (2003).
A district court's finding that a party did not meet its burden of proof is a negative factual finding. Such a finding will not be disturbed by an appellate court absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. General Building Contr., LLC v. Board of Shawnee County Comm'rs, 275 Kan. 525, 541, 66 P.3d 873 (2003). Finally, to the extent that resolution of this case requires the interpretation and legal effect of a written instrument, an appellate court has unlimited review. McGinley v. Bank of America, N.A., 279 Kan. 426, 431, 109 P.3d 1146 (2005).
The parties do not dispute the fact that Southern Star holds a properly recorded pipeline easement across the property. Once an easement is created, the owner of the land is the servient tenant and the easement holder is the dominant tenant. Potter v. Northern Natural Gas Co., 201 Kan. 528, 530-31, 441 P.2d 802 (1968).
"The owner of the servient tenement may make any use thereof which is consistent with or not calculated to interfere with the exercise of the easement granted. [Citations omitted.] The character and extent of the rights created by a grant of easement is determined by construction of the language of the grant and by the extent of the use made of the dominant tenement *1125 at the time of the grant. [Citations omitted.]" 201 Kan. at 531, 441 P.2d 802.
In Aladdin Petroleum Corporation v. Gold Crown Properties, Inc., 221 Kan. 579, 561 P.2d 818 (1977), the plaintiff conveyed real estate to the defendant subject to an express right-of-way easement reserved to the plaintiff. The right-of-way easement covered a specific width, length, and location. The defendant subsequently constructed carports directly on the easement. The plaintiff sued for injunctive relief and for an order requiring removal of the carports. The district court declined to enforce the express provisions of the plaintiff's easement, but instead the district court granted the plaintiff reasonable access to the property without ordering that the carports be removed. 221 Kan. at 580-84, 561 P.2d 818.
The Kansas Supreme Court reversed and stated:
"The law appears to be settled that where the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument the easement is specific and definite. The expressed terms of the grant or reservation are controlling in such case and considerations of what may be necessary or reasonable to a present use of the dominant estate are not controlling." 221 Kan. at 584, 561 P.2d 818.
The court held the plaintiff was entitled to a mandatory injunction requiring the removal of the carports because the right-of-way easement between the parties covered a specific width, length, and location and the carports were wrongfully constructed on the easement. However, in discussing what constitutes an obstruction to an easement, the court also stated:
"`An obstruction or disturbance of an easement is anything which wrongfully interferes with the privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before. To constitute an actionable wrong it must, however, be of a material character such as will interfere with the reasonable enjoyment of the easement. . . .'" (Emphasis added.) 221 Kan. at 588, 561 P.2d 818 (quoting 28 C.J.S., Easements, § 96, pp. 778-79).
See also Mid-America Pipeline Co. v. Lario Enterprises, Inc., 942 F.2d 1519, 1527 (10th Cir.1991) (court granted injunction requiring the removal of an asphalt racetrack which had been built directly over a pipeline easement covering a specific width).
The facts of Aladdin are distinguishable from the facts of this case because the easement in Aladdin covered a specific width, length, and location. The easement in this case is a blanket easement that does not have specified dimensions as it crosses the Cunnings' property. The easement only provides that Southern Star is granted a right-of-way on the property sufficient to operate and maintain its pipeline, together with all rights necessary for the convenient enjoyment of this privilege. Thus, Southern Star's rights under its blanket easement are less precise and not as readily enforceable as the plaintiff's easement rights in Aladdin. To prevail in this case, Southern Star must establish the encroachment on its easement was of a "material character" as to interfere with Southern Star's "reasonable enjoyment" of its easement. Aladdin, 221 Kan. at 588, 561 P.2d 818.
Turning to Southern Star's specific contentions, Southern Star first claims the district court erred in failing to define the easement as encompassing 33 feet on each side of the pipeline. However, the language of the easement only granted Southern Star such rights "as may be necessary or convenient" for the operation and maintenance of its pipeline. If Southern Star had wanted its easement to cover a specific width, it could have included that in the written instrument. Also, it was only Southern Star's "company policy" to require an easement of 33 feet on each side of the pipeline for proper maintenance. This particular width for a blanket easement is not specified in any federal or state statute or regulation.
There was nothing requiring the district court to make a particular finding as to how much square footage Southern Star's easement entailed. The district court examined the language of the easement and determined the easement's goal could be achieved *1126 with the garage in place. Specifically, the district court found that the pipeline could be attended to, with the garage only 41 inches away. As we will discuss in more detail, this finding was supported by substantial competent evidence. Accordingly, the district court did not err in failing to define Southern Star's easement as encompassing 33 feet on each side of the pipeline.
Southern Star also claims the district court erred when it found the garage was not an unreasonable interference with the easement. There was conflicting testimony on this issue. Hines testified that a 33-foot clearance on each side of the pipeline was necessary for proper maintenance. He also had safety concerns about excavating the pipeline so close to the garage, especially under emergency situations. However, Hines admitted there were methods to excavate the pipeline close to the garage, especially if the dirt could be moved more than 33 feet away on the working side.
Mance and McClure indicated the pipeline could be excavated with only a 41-inch clearance from the garage. Mance testified that a backhoe could operate off to one side of the pipeline in order to properly perform maintenance and repairs. He indicated the dirt could be moved more than 33 feet away on the opposite side of the garage, which could be accomplished in about 30 minutes.
The district court found that Southern Star had failed to prove it was more probably true than not that the garage constituted an unreasonable interference with Southern Star's easement. This finding was supported by substantial competent evidence and will not be disturbed on appeal even though there may have been contrary evidence which, if believed, would have supported a different finding. Haag, 11 Kan.App.2d at 653, 732 P.2d 392. The weight and credit to be given the testimony of the witnesses was for the district court to determine, and this court does not reweigh conflicting evidence. Morrison, 275 Kan. at 775, 69 P.3d 1087. The district court did not arbitrarily disregard undisputed evidence, and there is no indication the district court's judgment was influenced by some extrinsic consideration such as bias, passion, or prejudice. General Building Contr., LLC, 275 Kan. at 541, 66 P.3d 873. Accordingly, the district court did not err in finding the garage was not an unreasonable interference with Southern Star's easement.
Southern Star also claims the district court disregarded Hines' testimony about safety concerns. According to Hines, Southern Star sometimes encounters emergency situations when a broken pipeline requires immediate repair, and in such an emergency Southern Star's ability to repair the pipeline would be impaired by having only a 41-inch clearance on one side. Hines also testified it would be unsafe to put someone into a ditch to make repairs because the ditch could not be properly graded with the garage only 41 inches away from the pipeline. However, Hines' testimony was contradicted by Mance and McClure. Specifically, Mance testified that grading does not become an issue until a ditch is 6 feet deep, and in this case Southern Star's pipeline was only 36 inches below the surface.
The district court did not fail to consider Southern Star's safety concerns. However, the district court determined the only issue concerning safety involved the excavation, and district court found the Cunnings' evidence that the pipeline could be excavated without causing a safety hazard was more persuasive than Southern Star's evidence. Accordingly, the district court did not err in failing to require relocation of the garage because of safety concerns.
Finally, Southern Star claims the district court erred in balancing the equities after finding the garage encroached on the easement. Specifically, Southern Star claims the district court erred when it found the Cunnings' encroachment on the easement to be slight compared with the cost of removing the garage. Southern Star claims that once the district court determined the garage encroached on the easement, it was erroneous for the district court to weigh the inconvenience to Southern Star in working around the garage with the cost to the Cunnings in moving the garage.
Southern Star relies on Mid-America Pipeline Co. v. Wietharn, 246 Kan. 238, 250-51, *1127 787 P.2d 716 (1990). In Wietharn, a pipeline easement covered a specific width and stated there could be no construction on the easement that interfered with the normal operation and maintenance of the pipelines. Nevertheless, the landowner constructed several buildings on the easement directly over the pipelines. The pipeline company repeatedly warned the landowner that the construction was violating the terms of the easement, but the landowner continued to build. The pipeline company filed a lawsuit seeking injunctive relief. After hearing the evidence, the district court granted an injunction to halt construction of additional structures on the pipeline easement but refused to order the landowner to remove the buildings already constructed. Employing equitable principles, the district court ordered the pipelines under the existing buildings to be moved at the landowner's expense.
In a four to three decision, the Kansas Supreme Court reversed the district court's judgment. The Supreme Court rejected the district court's balancing of the equities when the landowner had acted with knowledge that he was violating the terms of the easement. The court held the district court erred in ordering the relocation of the pipeline rather than ordering the removal of the buildings located on the easement. 246 Kan. at 251, 787 P.2d 716.
The facts of Wietharn are distinguishable from the facts of this case. The easement in Wietharn covered a specific width, as opposed to being a blanket easement, so it was clear to the landowner in that case that his buildings were directly on the easement. Also, the landowner in Wietharn had been repeatedly warned by the pipeline company that he was violating the terms of the easement. Here, Ronnebaum had constructive notice of Southern Star's easement because it was on record with the register of deeds. He also had actual knowledge of the location of the pipeline. However, he did not have knowledge of how much space Southern Star claimed it needed in order to access and maintain its pipeline. When Ronnebaum learned that his proposed location for the garage was directly over the pipeline, he changed the plans so that at least some clearance would be provided. Also, Ronnebaum obtained a permit from the City of Leavenworth before he began construction of the garage.
The testimony was somewhat disputed as to whether Ronnebaum called Kansas One-Call when he began construction of the garage. This issue was significant because, had the call been made, Kansas One-Call would have notified Southern Star to mark its pipeline. This would have provided Southern Star the opportunity to inform Ronnebaum about its 33-foot clearance policy before he built the garage. Ronnebaum testified he made the call and that "someone" came out and marked the location of the pipeline. However, a witness for Kansas One-Call testified that the company never received a phone call from Ronnebaum.
The district court never resolved this factual dispute, and the district court made no specific findings as to whether Ronnebaum acted with knowledge that he was violating the terms of the easement when he built the garage. However, Southern Star did not object to the adequacy of the district court's findings in this regard. A litigant must object to inadequate findings of fact and conclusions of law in order to give the district court an opportunity to correct them. Where there has been no such objection, the district court is presumed to have found all facts necessary to support the judgment. Gilkey v. State, 31 Kan.App.2d 77, 77-78, 60 P.3d 351, rev. denied 275 Kan. 963 (2003) (quoting Hill v. Farm Bur. Mut. Ins. Co., 263 Kan. 703, 706, 952 P.2d 1286 [1998]).
Although it was unresolved whether Ronnebaum acted with knowledge that he was violating the terms of the easement when he built the garage, it is undisputed that the Cunnings were completely innocent of any wrongdoing. The garage was already constructed when the Cunnings purchased the property from Ronnebaum. These facts distinguish the present case from Wietharn, where the court ruled it was improper to balance equities.
In any event, the ultimate issue for the district court to determine was whether the encroachment on Southern Star's easement was of a "material character" as to interfere *1128 with Southern Star's "reasonable enjoyment" of its easement. See Aladdin, 221 Kan. at 588, 561 P.2d 818. This appears to be what the district court was doing rather than balancing the equities. The location of the garage only affected 27 feet of Southern Star's pipeline. Although the district court acknowledged the garage caused some inconvenience, the district court concluded that Southern Star had failed to prove the garage constituted an unreasonable interference with Southern Star's easement. The evidence presented at trial was sufficient to support this conclusion.
In summary, Southern Star's blanket easement did not expressly define the amount of space Southern Star needed to adequately maintain its pipeline. There was evidence that Southern Star could use means other than its standard practices in order to access and work on the pipeline. The district court weighed the evidence and found no material interference with the easement. This was a judgment for the district court to make based upon the evidence presented, and in this case the district court's decision was supported by substantial competent evidence. This does not mean that a 41-inch clearance from a natural gas pipeline would be considered adequate in every case. Under the facts of this case, however, we conclude the district court did not err in denying Southern Star's request for injunctive relief.
Affirmed.