(271 P.3d 1269)

No. 104,280[1]

LONZELLA BROWN, *Appellee*, v. CONOCOPHILLIPS PIPELINE COMPANY, *Appellant*.

---

[1]**REPORTER'S NOTE:** Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish pursuant to Rule 7.04 (2011 Kan. Ct. R. Annot. 57). The published version was filed with the Clerk of the Appellate Courts on February 28, 2012.

Opinion filed September 9, 2011.

*Teresa J. James* and *Teresa L. Adams*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, for appellant.

*Teresa Bingham*, of UAW-Ford Legal Services Plan, of Kansas City, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and BRAZIL, S.J.

BRAZIL, J.: This appeal concerns the fate of a large oak tree on the property of Lonzella Brown. The appellant, ConocoPhillips Pipeline Company (Conoco), owns an easement giving it the right to "lay, maintain, operate, inspect and remove" its high-pressure gasoline pipeline which runs through Brown's property. The pipeline was laid in the 1960s, and since that time the tree has sprung up above the pipeline. In 2009, Conoco sought to cut down the tree on the basis that it interfered with its ability to maintain and inspect the pipeline. Brown eventually obtained a permanent injunction preventing Conoco from removing the tree unless an emergency arose. On appeal, Conoco argues that the court erred in finding that the tree did not constitute a material obstruction to their easement. We vacate the injunction and remand.

Conoco owns a 10" high-pressure gasoline pipeline which runs from Paola to Wyandotte County. The pipeline passes through Brown's property in Wyandotte County. The pipeline was laid in 1963 by Conoco's predecessor, Phillips Petroleum Company (Phillips). That same year, Phillips purchased an easement from the people who owned the property at the time. The easement gen-

erally describes the area on the property where the pipelines were to be laid but did not expressly specify the width, length, or location of Phillips' rights for ingress and egress. The agreement merely stated that Phillips had the right to "lay, maintain, operate, inspect and remove" the two pipelines on the property. Otherwise, the landowners were vested with the right to "fully use and enjoy said premises except for the purposes hereinabove granted." The easement was recorded with the Wyandotte County Register of Deeds in 1963. The pipeline has been used continuously since being constructed.

When Brown bought the property in 2000, the tree in question was already present. The tree is a 30-year-old pin oak and is 60' to 70' tall. Conoco began a tree-clearing project along the 53-mile route of the pipeline from Paola to Wyandotte County. Conoco removed a number of trees in the course of its tree-clearing project. In October 2009, Conoco informed Brown that it needed to remove the tree. Brown refused to allow Conoco to do so. Brown filed a petition for injunctive relief in Wyandotte County District Court seeking to enjoin Conoco from entering her land and cutting the tree down. Brown subsequently obtained a temporary restraining order against Conoco. Conoco counterclaimed breach of contract against Brown and for a declaratory judgment confirming its right to remove the tree.

The case proceeded to a hearing before the district court on February 9, 2010. Brown testified that she did not want to lose the tree because it is the only tree in her backyard, it shades her house and yard, and her granddaughter likes to play under it. She called a horticulturist, Phillip Hogan, as an expert, who testified that 80% or 90% of the tree's roots were located within 3 feet of the surface. Hogan testified that tree roots take the path of least resistance, meaning that if they ran into the pipeline, they would go around it because soil is softer than the pipe. He testified that while the top of a tree moves with the wind, tree roots are stable and do not move. Hogan valued the tree at $12,000. However, in making this valuation, Hogan did not take the easement into consideration. He estimated that if the tree was cut down and a new one planted,

Brown would be over 90 years old before the replacement tree would reach the current tree's size.

On cross-examination, Hogan admitted the tree's roots could extend over and across the pipeline if the pipeline was located within the first 3 or 4 feet of the ground's surface. He conceded that the pipeline could be damaged by the tree's roots if the pipeline is located close to the surface within a few feet of the tree, much in the same way that tree roots can damage a house's foundation if the house is too close to a tree. He also admitted he did not know the depth at which the pipeline had been buried nor did he know the pipeline's location in relation to the tree. Finally, Hogan admitted he knows nothing about gas pipelines or the safety concerns related to pipelines and tree roots.

Conoco called Michael Kemp, a claims consultant, and Todd Tullio, a regulatory compliance planning manager. Both Kemp and Tullio testified that the pipeline was located about 1 or 2 feet from the edge of the tree. Tullio was unsure of the precise depth at which the pipe had been buried in 1963 but estimated its present location was less than 36" under the ground's surface. Tullio testified that the close proximity of the tree to the pipeline could damage the pipeline because the roots could rub the pipeline's protective coating off, causing the pipe to corrode. Tullio explained that the pipeline moves when gasoline is being pumped through it and that the sustained friction between the pipeline and the roots could lead to the loss of the protective coating. The resulting corrosion of the pipeline could lead to a number of different problems, including large or small gasoline leaks, pipeline ruptures, environmental impacts, or possibly an explosion. He also presented pictures showing the effects tree roots can have on pipelines.

Tullio testified that if there were problems with the pipeline on Brown's property, Conoco would be unable to excavate around the pipeline until the tree was cut down because of safety concerns and the inability to access the pipeline due to its close proximity to the tree. He estimated Conoco would be delayed from immediately accessing the pipeline by "at least a couple of days."

He further testified that the tree also impeded Conoco's ability to maintain the pipeline because it interfered with pipeline in-

spections mandated by federal regulations. Federal guidelines require Conoco to aerially inspect its pipelines 26 times per year. Conoco contracts with an aerial company which navigates the pipeline's route and looks for a variety of things, including dead vegetation, debris, people digging or planting vegetation, and the like. If federal auditors detect shrubs or trees that prevent them from examining the pipelines, they can serve the pipeline company a notice of probable violation (NOPV), which gives the company 160 days to clear the right-of-way or face a fine. Tullio explained by way of example that Conoco had received a NOPV on a different pipeline in 2008. He testified that the efforts to remove Brown's tree were motivated in part by Conoco's desire to prevent it from receiving an NOPV. However, Conoco has not received an NOPV because of the tree at this time.

In addition to the aerial inspection done every 2 weeks, Conoco also inspects its pipelines once every 5 years by using "smart pigs," which are electronic devices that run through the pipelines to detect depth, wall thickness, dents, or other anomalies. The most recent smart-pig test of the Paola/Wyandotte County pipeline revealed 74 anomalies, which Conoco addresses by excavating down to the pipeline and repairing the problem. Conoco addresses problems in order of their seriousness, with all problems attended to within 1 year of their detection.

After the close of the hearing, the district court took the case under advisement. On March 16, 2010, the district court issued its decision in a memorandum opinion. The district court noted that the issue before it was whether the tree interferes with Conoco's rights under its easement to maintain and inspect the pipeline, when balanced against Brown's right to "fully use and enjoy" her property. On the facts before it, the district court concluded the tree did not constitute a material interference to Conoco's ability to maintain the pipeline. There are currently no anomalies in the pipeline requiring maintenance, and in the event it became necessary for Conoco to excavate the pipeline, the tree would not prevent it from doing so. In other words, the district court concluded the tree would only make excavation more difficult but

would not prevent Conoco from accessing the pipeline if the need arose.

The district court also concluded the tree did not constitute a material interference to Conoco's ability to inspect the pipeline. The district court noted that Conoco had not complained about the tree for 30 years, and although it could not aerially inspect the pipeline, it still had the ability to use whichever means of inspection it had used for the previous 3 decades. In sum, the district court held that the tree did not materially interfere with Conoco's easement sufficiently to outweigh Brown's right to fully use and enjoy her property. Thus, the district court awarded Brown an injunction enjoining Conoco from removing the tree. However, the district court provided that in the event of an emergency requiring immediate access to the pipeline, Conoco has the right to take any necessary action in the area of the tree.

Conoco appeals.

The essence of Conoco's argument is that the district court erred in the injunction because the evidence shows that the tree substantially interferes with Conoco's easement.

When the trial court has made factual findings and conclusions of law, the appellate court's function is to determine whether substantial competent evidence supports the trial court's findings of fact, and whether the findings are sufficient to sustain its conclusions of law. *Southern Star Central Gas Pipeline, Inc. v. Cunning*, 37 Kan. App. 2d 807, 811, 157 P.3d 1120 (2007). Substantial evidence is evidence that contains both relevance and substance and which provides a substantial factual basis for the resolution of the issues. When reviewing a trial court's decision, an appellate court must regard as true the evidence and all inferences that can be drawn from the evidence to support the trial court's factual findings and must ignore any contradictory evidence or other inferences that could be drawn therefrom. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993). The district court's conclusions will not be disturbed on appeal even though there may be evidence which may support a different outcome. *Haag v. Dry*

*Basement, Inc.*, 11 Kan. App. 2d 649, 653, 732 P.2d 392, *rev. denied* 241 Kan. 838 (1987).

The parties agree that Conoco holds a properly recorded pipeline easement across Brown's property, giving Conoco the right to "lay, maintain, operate, inspect and remove" its pipeline. Once an easement has been formed, the landowner is the servient tenant and the holder of the easement is the dominant tenant. *Potter v. Northern Natural Gas Co.*, 201 Kan 528, 530-31, 441 P.2d 802 (1968). The servient tenant may make any use of his or her property which is consistent with or not calculated to interfere with the use of the easement granted. Courts determine the character and extent of each parties' rights under the easement by examining the language of the grant and the extent of the dominant tenant's use of the easement at the time it was granted. *Cunning*, 37 Kan. App. 2d at 812. An obstruction or disturbance of an easement is something that wrongfully interferes with the privilege to which the dominant tenant is entitled by making its use of the easement less convenient and beneficial. *Mid-America Pipeline Co. v. Wietharn*, 246 Kan. 238, 243, 787 P.2d 716 (1990). However, an obstruction or disturbance of an easement is not actionable unless it is of such a material character as to interfere with the dominant tenant's reasonable enjoyment of the easement. *Aladdin Petroleum Corporation v. Gold Crown Properties, Inc.*, 221 Kan. 579, 588, 561 P.2d 818 (1977).

The language of the grant forming the easement determines whether it is a specific easement or a blanket easement. A specific easement is formed when the width, length, and location of the easement for ingress and egress have been expressly described in the instrument creating the easement. In a specific easement, the terms of the grant or reservation are controlling, and no efforts should be made to consider what may be necessary or reasonable use of the easement. *Aladdin*, 221 Kan. at 584. In other words, if the language of the instrument creating the easement mandates the easement be a specific width, the servient tenant may not encroach upon the right-of-way within the area described. *Wietharn*, 246 Kan. at 244. In a blanket easement, on the other hand, the instrument creating the easement does not delineate specific di-

mensions of the easement for ingress and egress as it crosses the servient tenant's property. See *Cunning*, 37 Kan. App. 2d at 813; *Aladdin*, 221 Kan. at 585.

Here, as Conoco notes, its right-of-way in this case has some elements of both a specific easement and a blanket easement. On one hand, the wording of the original instruments describes general areas where the pipelines are to be laid. But on the other, the right-of-way contract does not specify the exact width or location of the easement for ingress and egress within which the servient tenant may not encroach. Consequently, the present easement is best classified as a blanket easement because Conoco's rights are imprecise and more difficult to enforce than they would be if the instrument explicitly described the boundaries of the easement.

To summarize, to obtain the injunction it sought, Brown was required to show that the tree did not constitute a material encroachment that interfered with Conoco's reasonable enjoyment of the easement. See *Cunning*, 37 Kan. App. 2d at 813-14; *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986) ("At the trial level, the burden of proof in an injunction action is upon the movant."). The district court concluded the tree was not a material obstruction to Conoco's easement. The question before us is whether that conclusion is supported by substantial competent evidence.

Both Conoco and Brown cite to this court's decision in *Cunning* to support their claims that they should prevail in this case. In *Cunning*, the dominant tenant held a blanket easement over the servient tenant's property, giving the dominant tenant the right to maintain and inspect its pipeline as necessary or convenient. The servient tenant built a garage adjacent to the pipeline, with a 41-inch clearance between the pipeline and the wall of the garage. The dominant tenant brought a petition for ejectment, demanding the servient tenant remove the garage. At a bench trial, an expert for the dominant tenant initially testified that excavation around the pipeline would be impossible if the garage were only 41 inches away. On cross-examination, however, the expert admitted it may be possible to excavate the pipeline if certain procedures took place. Two experts for the servient tenant testified that the pipeline

could be safely excavated despite the pipeline's close proximity to the wall. The district court subsequently denied the dominant tenant's petition for ejectment, finding that the dominant tenant had failed to meet its burden of proof that the garage constituted an unreasonable interference with its easement. 37 Kan. App. 2d at 810-11. The Court of Appeals affirmed the district court's decision on the basis that it was supported by substantial competent evidence. The court declined to reweigh the evidence or the credibility the district court had assigned to the testimony of the witnesses each side had called. 37 Kan. App. 2d at 815.

There is a significant difference between this case and *Cunning*. In *Cunning*, evidence was presented on both sides of the controlling issue of that case—whether the garage caused a material impediment to the dominant tenant's easement by making excavation of the pipeline unreasonably difficult or impossible. The dominant tenant's expert answered "yes," the servient tenant's experts answered "no." The district court in *Cunning* found the servient tenant's experts to be more convincing. In contrast, the evidence that the tree roots could significantly harm the pipeline was undisputed in this case. The district court found:

- the majority of the tree roots were in the first 3 feet from the ground's surface;
- the pipeline was within 2 feet of the tree and likely buried at a depth of 3 feet, though it might be closer to the surface at this time;
- the close proximity of the tree to the pipeline would make excavation of the pipeline more difficult, but still possible;
- aerial surveillance is an important means of inspecting the pipeline, and the tree impairs Conoco's ability to aerially inspect portions of the pipeline on Brown's property;
- Conoco could incur an NOPV because of the tree, meaning Conoco would face a penalty unless it did not remove the tree.

Despite the above facts, the district court concluded the tree did not constitute a material interference to Conoco's ability to maintain the pipeline. The district court's conclusions are not consistent with its factual findings or the evidence presented. The district

court heard undisputed evidence that the close proximity of the pipeline to tree roots can cause significant problems. The testimony that tree roots can damage pipelines was completely uncontested at trial. Brown's expert, Hogan, testified that tree roots travel in the path of least resistance. But by Hogan's own admission, he is not an expert when it comes to tree roots and their impact on pipelines. Furthermore, Hogan admitted the tree's roots could extend over and across the pipeline and that the pipeline could be damaged similar to the way a house's foundation can be damaged by tree roots. If there were any evidence that the tree and the pipeline could coexist in such close proximity, the district court's decision should be affirmed. But the facts of this case simply do not support such a conclusion.

The risk of damage the tree roots could cause to the pipeline alone is sufficient to show that the tree materially interferes with Conoco's privilege to use its easement, let alone the undisputed testimony that the tree causes a significant interference with Conoco's ability to inspect its pipeline. Considering there was no dispute that the tree roots can cause significant harm to the pipeline, the district court's conclusion that the tree did not cause a material interference with Conoco's easement was unsupported by substantial competent evidence.

Finally, we must determine whether the district court erred by awarding Brown an injunction. Conoco contends the district court erred in awarding an injunction because the legal requirements for the granting of an injunction were not met in this case.

The grant or denial of injunctive relief is an action in equity and involves the exercise of judicial discretion. Appellate courts generally will not interfere with a district court's grant or denial of an injunction unless the district court abused its discretion. However, when an appeal frames questions of law, including the threshold legal requirements for injunctive relief in a particular case, appellate review is unlimited. *Friess v. Quest Cherokee*, 42 Kan. App. 2d 60, 63-64, 209 P.3d 722 (2009).

The district court in this case awarded a prohibitory injunction, as opposed to a mandatory injunction. A mandatory injunction requires the performance of an act, while a prohibitory injunction

requires a party to refrain from performing a particular act. *Wietharn*, 246 Kan. at 242. There are four elements Brown was obligated to prove in order to obtain injunctive relief:

" '(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.' [Citations omitted.]" *Lenox*, 11 Kan. App. 2d at 462.

Conoco argues the district court made inadequate findings to support some of the above required elements. For example, Conoco argues monetary damages would have been sufficient to compensate Brown for the loss of her tree. Conoco further contends the threat of injury it faces greatly outweighs the possible injuries Brown would incur if the tree was removed, and that the tree causes undue risks to the public.

It is unnecessary to examine whether the district court erred by failing to weigh the above four elements. Before the above elements can be applied, the first question which must be addressed is whether an equitable remedy is appropriate in the first place. "[E]quity never flies in the face of positive law, nor is it invokable to unsettle thoroughly established legal principles." *Moore v. McPherson*, 106 Kan. 268, 273, 187 P. 884 (1920). A party cannot obtain an equitable remedy unless there is a wrong for which a remedy is necessary. *First Nat'l Bank & Trust Co. v. Wetzel*, 42 Kan. App. 2d 924, 929, 219 P.3d 819 (2009). Thus, to be entitled to an injunction, Brown must have suffered a wrong requiring an equitable remedy.

Brown has not been wronged in this case. There is no dispute that Conoco has the right under its easement to maintain the pipeline. The undisputed facts of this case show that the tree materially obstructs Conoco's reasonable enjoyment of its easement. There is therefore no reason to analyze the above elements. The district court's injunction is vacated and the matter remanded so that Conoco can exercise the privileges it enjoys under the easement.

Vacated and remanded.