NOT DESIGNATED FOR PUBLICATION

Nos. 122,358
122,891

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LEGATO, LLC,
*Appellant*,

v.

CITY OF OLATHE, KS;
WOODBURY CORPORATION;
GREAT OLATHE CENTER LLC;
and
BETH WRIGHT,
*Appellees*.


MEMORANDUM OPINION


Appeal from Johnson District Court; KEVIN P. MORIARTY and ROBERT J. WONNELL, judges. Opinion filed July 30, 2021. Affirmed in part, reversed in part, and remanded with directions.


*John M. Duggan* and *Andrew I. Spitsnogle*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellant.


*Jason R. Scheiderer*, *Steven M. Aaron*, and *Betsey L. Lasister*, of Dentons US LLP, of Kansas City, Missouri, for appellee Great Olathe Center, LLC.


*Leslie Greathouse*, *Pat McInerney*, *Thomas Hiatt*, and *Madison Perry*, of Spencer Fane LLP, of Kansas City, Missouri, for appellees City of Olathe and Beth Wright.


*Christopher M. Grunewald* and *Ronald Shaver*, of City of Olathe, for appellee Beth Wright.


*Jere D. Sellers*, of Stinson Leonard Street LLP, of Kansas City, Missouri, for appellee Woodbury Corporation.

Before GREEN, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: The property at issue has been the subject of multiple lawsuits between Legato, LLC (Legato) and the City of Olathe (City) since the 1980s. Legato owns property partially located in a benefit district created by the City. Legato granted the City an easement to maintain and use stormwater detention ponds on its property. A potential developer submitted preliminary site development plans to the City Planning Commission to build a mixed-use development, indicating it would use the City's easement to drain all its stormwater, potentially flooding Legato's property. Legato then sued the City, the adjacent landowner, the developer, and the City engineer, alleging 13 counts focused on the City's purported procedural violations to rezone the property and the developer's alleged intent to flood Legato's property with stormwater.

Legato now timely appeals from the district court's summary judgment ruling disposing of numerous disputes, claiming the district court improperly dismissed its claims by extrapolating answers to three questions into a sua sponte dismissal for failure to state a claim; the district court erred in failing to explain its factual and legal determinations in its summary judgment rulings; and the district court incorrectly ruled on the three summary judgment claims it did specifically address. For reasons explained below, we affirm the district court's judgment on Counts 1, 3, 5, and 6 because we find the issues are now moot. We also affirm the district court's finding on Counts 9, 12, and part of 13 as being moot. However, we reverse the district court's grant of summary judgment on Counts 4, 8,10, 12 and part of 13 where factual disputes remain. Thus, we affirm in part, reverse in part, and remand with directions.

FACTS

In 1986, Legato's predecessor, Olathe Santa Fe Partnership (OSFP), purchased approximately 362.55 acres of property in Olathe, Kansas. The City later approved a

benefit district comprising 241.3 acres—including some of OSFP's property—to construct streets, drainage, water lines, and sanitary sewers. As part of the Benefit District, the City was required to construct a stormwater detention system comprised of six ponds with outlet structures on one of OSFP's lots—lot 16. The City tried to levy a special assessment on the Benefit District landowners before completing the construction. The landowners sued the City for, among other things, injunctive relief prohibiting the City from prematurely levying a special assessment on the property and for inverse condemnation on about 18 acres of property taken by the City.

In 1993, the parties settled, and the City paid $150,000 in exchange for an easement on lots 16 and 27 of the Benefit District to operate the stormwater detention system. The easement agreement stated the City would construct certain stormwater detention facilities in the form of detention ponds and culverts, covering 17.91 acres, more or less, on OSFP's property. The City agreed to maintain the detention facilities by ensuring their structural and functional integrity, including removing silt, mud, and other vegetation. The parties agreed the easement agreement would run with the land.

In 1994, the landowners sued the City again, alleging the City failed to complete building the stormwater detention facilities in violation of the 1993 settlement agreement. The parties settled their dispute through a supplemental settlement agreement, and the City agreed as part of the settlement agreement to complete excavation and construction work on the detention ponds and levy the special assessment on the property owners. OSFP and other landowners within the Benefit District granted the City a permanent drainage easement on lot 16.

Later, a developer built the Great Mall of the Great Plains (Great Mall) on 105.5 acres next to OSFP's property. The Great Mall used the stormwater detention facility on lot 16 of the Benefit District. But the Great Mall ultimately failed and was demolished. The Great Olathe Center, LLC (GOC) owned the Great Mall property and contracted

3

with Woodbury Corporation (Woodbury) to build a new development. In November 2018, Woodbury submitted a rezoning application and preliminary site development plans to the City Planning Commission for a mixed-use development called "Mentum." Mentum's preliminary stormwater management plan revealed all onsite and offsite stormwater runoff would flow into the existing detention system maintained by the City and located on lot 16. Legato still owned part of lot 16 not subject to the easement.

On January 14, 2019, the City Planning Division held a planning commission meeting regarding Woodbury's rezoning application for Mentum's mixed-use development. The planning division staff recommended approval of the rezoning application and preliminary development plans. At the meeting, Legato challenged the development's stormwater detention and requested Woodbury place the project on hold pending a proper analysis.

On February 1, 2019, Legato sent a letter to the City Council stating Legato and its predecessors never granted an easement for its ponds to serve Mentum's 105.5-acre development. Legato asserted the easement was strictly between the City and Legato's predecessors to serve the Benefit District and, by detaining stormwater runoff from the Mentum development, the ponds would regularly flood Legato's property outside the easement previously granted.

On February 5, 2019, the City Council approved Woodbury's rezoning application. The senior planner with the City Planning Division stated the rezoning ordinance would not be published until Woodbury completed purchase of the property. Legato again voiced its concern with the development's stormwater discharge plan, asserting Mentum did not have a contract right to store and discharge water on Legato's property.

In March 2019, Legato filed its petition and later filed its first amended petition in April 2019 against the City, GOC, Woodbury, and the City's engineer, Beth Wright

4

(collectively the defendants), for nontort claims (*Legato I*). Legato sought relief on 13 separate counts:

1. Declaratory judgment that the City's approval of Woodbury's rezoning application and Mentum stormwater plans approved by the City were invalid because they failed to comply with applicable law;

2. Declaratory judgment that Woodbury, GOC, and the City did not have the right to discharge stormwater from the Mentum project beyond the boundaries set forth in the settlement and easement agreements;

3. Declaratory judgment that the City's approval of Woodbury's rezoning application was invalid due to violations of Legato's due process and equal protection rights;

4. Just compensation from the City for a taking of Legato's property for public use without a formal condemnation proceeding;

5. Declaratory judgment that the City's approval of Woodbury's rezoning application and Mentum's stormwater plans were invalid under K.S.A. 12-760;

6. Declaratory judgment that the City's approval of Woodbury's rezoning application was unreasonable under K.S.A. 12-760;

7. Judgment for damages against the City for breach of contract of the settlement agreement, easement agreement, and supplemental settlement agreement;

5

8. Judgment for damages against the City for breach of contract (in the alternative) of the settlement agreement and easement agreement;

9. Judgment in mandamus, directing the City to deny Woodbury's rezoning application and requiring the City and its engineer to enforce mandatory state law as well as the City Stormwater Ordinance for future rezoning applications and stormwater discharge plans and prohibiting Woodbury from discharging stormwater onto lot 16;

10. Judgment against the City for inverse condemnation;

11. Temporary restraining order prohibiting construction on the Mentum development until final adjudication of the claims asserted;

12. Temporary injunction prohibiting construction on the Mentum development until final adjudication of the claims asserted; and

13. Permanent injunction prohibiting construction on the Mentum development and using the 1996 drainage easement to discharge stormwater from outside the Benefit District onto lot 16 beyond the easement and settlement agreements.

Legato voluntarily dismissed Count 11. The City moved to dismiss Counts 1 through 3, arguing Legato's claims were not ripe for judicial review because Woodbury's preliminary stormwater management plan was not final and Woodbury's rezoning application was not effective as it was not yet published. The City also argued Legato's Counts 5 through 8 should be dismissed for failure to state a claim upon which relief could be granted.

The City also filed an amended answer and affirmative defenses, counterclaims, and third-party petition in response to Legato's first amended petition. The City alleged in its counterclaims abuse of process, tortious interference with a prospective business advantage or relationship, breach of contract under both the settlement agreement and easement agreement, and sought a declaratory judgment to determine whether the City could drain stormwater onto Legato's property where the detention ponds were located.

Woodbury then submitted its final stormwater management plan to the City. The final stormwater management plan still showed Woodbury intended to use the detention system located on lot 16 on Legato's property. The original 2009 study showed expansive flooding within the 100-year floodplain; however, a new study conducted in 2012 showed culvert pipe located under a railroad spur had washed out in a storm event and curtailed the 100-year floodplain on lot 16. The Mentum development was also supposed to be less impervious than what the current study showed and, therefore, would not increase downstream flooding. Woodbury concluded based on the study no detention system was required on its property. The City Public Works Deputy Director Beth Wright confirmed such findings. The City reviewed and approved Woodbury's final stormwater management plan.

On May 6, 2019, Legato appealed the City's approval of Woodbury's final stormwater management plan to the City Board of Code Review (Board). Legato argued the City's engineer did not have authority to approve or disapprove the final stormwater management plan and, even if the City's engineer did have authority, such approval violated Legato's due process rights by failing to: provide preliminary or final stormwater management plans; provide notice of Woodbury's applications for preliminary or final stormwater management plan approval; hold a hearing on such preliminary or final plans; disclose the identity of the City's engineer; and hold any prehearing conference after giving the parties reasonable notice. The Board denied Legato's appeal.

On May 8, 2019, the parties appeared in district court to address the defendants' motion to dismiss Counts 1 through 3 and 5 through 8. The defendants argued the rezoning application was not effective despite the City's approval because the ordinance had not been published. The developer, Woodbury, and the landowner, GOC, requested the ordinance not be published until Woodbury actually bought the land; thus, the rezoning ordinance would only become effective if the development went forward. The City clarified no sale date had been established because the current lawsuit clouded title to the land. The district court ordered each party to file a motion for summary judgment addressing three specific questions:

"1. Did the City of Olathe follow its zoning requirements?
"2. Is there a contract between the parties? [and]
"3. Are the parties fulfilling their requirements under their contracts, if any?"

The district court stayed further proceedings, including discovery, with the summary judgment motions pending.

Legato argued in its motion for summary judgment the City failed to follow its own stormwater management and rezoning ordinances, rendering the City's approval of Woodbury's rezoning application unlawful. Specifically, Legato asserted the City staff failed to present a preliminary stormwater management report to the planning commission and failed to enforce an ordinance which required Woodbury to construct stormwater detention facilities on its own property to manage stormwater runoff in various flood events. Legato also argued the district court should find the parties entered into several contracts, including the 1993 easement agreement and the 1993 settlement agreement and, under those contracts, the defendants possessed no right to discharge stormwater beyond the legally defined boundaries of the easement.

In support of Legato's motion, a professional civil engineer's testimony was presented through an affidavit, claiming Woodbury's final stormwater plan showed stormwater would flow beyond the existing easement boundaries. Legato's civil engineer also asserted that both the preliminary and final stormwater plans failed to analyze the detention ponds' current depths or capacities to hold stormwater and additional studies would need to determine the effect of the proposed development's stormwater on surrounding property. Finally, Legato argued in its motion for summary judgment the City breached the settlement and easement agreements by approving Woodbury's rezoning application and Mentum's stormwater plans. Legato contended the City repudiated its contract obligations by declaring its lack of intent to perform under the agreements and limit stormwater discharge to the legally defined boundaries of the easement.

The City argued in its motion for summary judgment that the uncontroverted facts established enforceable contracts permitting discharge of stormwater onto the Legato property and the Mentum development would not breach those contracts. The City alleged the contracts allowed the ponds to contain water at normal pool levels but did not address maximum levels. The City also argued it properly submitted a rezoning application, preliminary site development plan, and preliminary stormwater management plan for the Mentum development.

GOC also filed a motion for summary judgment which incorporated and adopted the City's explanation about whether the City followed proper zoning requirements. GOC recognized it was not a party to the contracts at issue but asserted a legal right to drain stormwater into the detention ponds on Legato's property under the City's contracts with Legato. Finally, GOC argued the City's contracts with Legato provided a blanket easement to drain all stormwater from the Mentum development into the detention ponds. Woodbury moved to join the City and GOC's motion for summary judgment.

9

The district court heard oral arguments in June 2019 on the cross-motions for summary judgment and Legato's motion for an extension of time to conduct discovery. The district court denied Legato's motion for an extension of time, reasoning more time for discovery was not needed and the district court would make a ruling based on the four corners of the contract. The district court found no genuine dispute of material fact and, as a matter of law, the City followed its zoning and notice requirements to the parties in the case. The district court also found a valid contract existed between the City and Legato and such contract contained an integration clause. The district court explained the terms of the contract were customary and the parties agreed to an easement containing 17.91 acres, more or less, providing for some flexibility governed by a reasonable person standard. The district court noted there were no disputed questions of fact other than the maintenance obligations on the ponds under the contracts and reserved that issue—set out in Count 7—for a later time.

On July 11, 2019, Legato filed another verified petition for tort claims against the defendants based on new facts (*Legato II*). The tort claims involved common questions of law and fact to Legato's amended petition, and the parties agreed to consolidate the cases.

At a hearing July 26, 2019, the parties could not resolve the issues involving the journal entry from the June 2019 hearing. The district court, at a later August 2019 hearing, approved the journal entry drafted by the defendants. As it related to the initial three questions on which the district court had instructed each party to brief in their respective motions for summary judgment, the district court held the City followed its zoning requirement, there was a valid contract between the parties, and the parties were taking care of their responsibilities under the contract. The district court also entered judgment in Legato's favor on Count 2 and dismissed Counts 4, 8, 9, 10, 12, and 13 as moot. Legato again objected to the journal entry approved from the June 2019 hearing, alleging the district court, upon entering summary judgment, failed to specifically make findings of fact and conclusions of law.

Legato filed a motion requesting the district court to amend its findings, make additional findings, and to alter or amend its judgment based on the posttrial motion. At the December 2019 hearing, counsel for GOC and Woodbury informed the parties and the district court the Mentum development was no longer going forward. The district court denied Legato's posttrial motion. Legato timely appealed.

At oral argument before us, the City was asked if it would formally withdraw the ordinance. Since oral argument, the City has filed with our court Resolution No. 21-1040 stating the staff is not to publish the ordinance at issue in this litigation and a letter stating the City has withdrawn its approval of the Mentum development final stormwater management plan.

Legato has filed a response, stating it has no objection to the City's post-oral argument filing, but it questions whether the City's resolution to order the ordinance in question not to be published and the withdrawal of its approval of the Mentum development final stormwater management plan are sufficient to make some of the counts outlined above moot.

ANALYSIS

I.     MULTIPLE ISSUES ON APPEAL ARE MOOT.

The district court directed the parties to address three specific questions through competing motions for summary judgment rather than address each issue count by count. Legato argues the district court erred in sua sponte extrapolating its answers to the three questions into a dismissal of Legato's claims for failure to state a claim.

The district court found there were no disputed questions of fact and the whole action had been resolved through the parties' competing motions for summary judgment

11

answering the following three questions: (1) Whether the City followed its zoning requirements; (2) whether there was a contract between the parties; and (3) whether the parties were fulfilling their requirements under their contracts, if any. The district court found its rulings on the three questions addressed most of the claims raised in Legato's amended petition and resulted in most of Legato's claims being dismissed. The district court granted judgment to the defendants on Counts 1, 3, 5, and 6.

The often-stated rule on summary judgment is:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

The district court resolved all facts and reasonable inferences drawn from the evidence in the parties' briefs and the judgment granted on Counts 1, 3, 5, and 6 to then dismiss as moot Counts 4, 8, 9, 10, 12, and 13. An issue is moot and subject to dismissal if "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.' [Citation omitted]." *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2020). The *Roat* court explained that a case is not moot if there is potential for adverse legal consequences in the future. 311 Kan. at 592-93.

We find the post-oral argument filing by the City sufficiently reflects the controversy over the rezoning process and approval of the stormwater management plan is over even though Legato questions the sufficiency of the City's action to stop publication of the ordinance at issue and withdrawal of its approval of the stormwater management plan. Based on the uncontroverted facts and the City's post-oral argument resolution and action, we find the district court correctly entered judgment for the defendants on Counts 1, 3, 5, and 6 because the counts are now moot. We also affirm the district court's finding that part of Count 13 asking for a permanent injunction to stop the development of the Mentum project is moot. However, as explained below, we find the question under count 13 of whether the City is trying to discharge stormwater from outside of the Benefit District into the detention ponds remains a factual question to be resolved along with the remaining counts. Our finding is further supported by the fact both GOC and Woodbury advised the district court the project was terminated and Woodbury would not be buying the property.

Another development would require different considerations on the part of the City, including its planning commission, and we observe no adverse legal consequences in the future by finding these current counts are moot. The district court's decision to grant judgment on Counts 1, 3, 5, and 6 is correct because the issues are now moot. As to Counts, 9, 12, and part of 13, requesting a permanent injunction prohibiting construction on the Mentum development, we find they are also moot. The district court's decision becomes right for any reason, and we affirm the grant of summary judgment on those counts on that basis. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

*Count 4, Count 8, Count 10, and Count 13*

Legato sought just compensation from the City for a taking of its property for public use without a formal condemnation proceeding (Count 4); judgment for damages against the City for breach of contract (in the alternative) of the settlement agreement and

13

easement agreement (Count 8); judgment against the City for inverse condemnation (Count 10); and a permanent injunction prohibiting the use of the 1996 drainage easement to discharge stormwater from outside the Benefit District onto lot 16 beyond the easement and settlement agreements (Count 13). The district court ordered the parties to brief the issue of whether the parties were fulfilling their requirements under their contracts, if any such contracts existed. The district court found, based on the parties' briefing on these questions, contracts did exist between Legato and the City, including two settlement agreements and an easement agreement. The district court determined the parties were fulfilling their contractual obligations and dismissed Legato's claims. But it did find undisputed material facts showed there was a likelihood the City would exceed the easement boundaries in a 100-year storm event.

The district court improperly dismissed as moot Legato's claims for just compensation, breach of contract under the settlement agreement and easement agreement, breach of contract under the settlement agreement and easement agreement (in the alternative), inverse condemnation, and request for permanent injunction to stop the City from discharging water on to the Legato property from outside of the Benefit District because no taking had occurred under either of the settlement agreements or the easement. These claims have unresolved facts with the current status of the proceedings. We find factual disputes remain regarding whether the past actions of the City in the initial passing of the ordinance and stormwater management plan resulted in a temporary regulatory taking by the City. The settlement agreements along with the easement define the size and nature of the Benefit District, and the City cannot exceed the defined limits of either the settlement agreements or the easement. Because there appears to be factual disputes over the City's past actions, the district court erred in granting summary judgment on Counts 4, 8, 10, and the part of Count 13 requesting a permanent injunction prohibiting the use of the 1996 drainage easement to discharge stormwater from outside the Benefit District onto lot 16. We reverse and remand these counts for further proceedings.

14

II.      THE JOURNAL ENTRY GRANTING SUMMARY JUDGMENT COMPLIES WITH K.S.A.
         2020 SUPP. 60-252.

Legato claims the district court erred by not making specific factual findings and conclusions of law as required by K.S.A. 2020 Supp. 60-252. Statutory interpretation involves a question of law over which an appellate court has unlimited review. *Gannon v. State*, 305 Kan. 850, 874, 390 P.3d 461 (2017). K.S.A. 2020 Supp. 60-252(a)(1) states: "[U]pon entering summary judgment, the court must find the facts specially and state its conclusions of law separately." See Supreme Court Rule 165(a) (2021 Kan. S. Ct. R. 230). The purpose of K.S.A. 2020 Supp. 60-252 is to aid the integrity of the district court's decision and to facilitate appellate review. When the district court fails to provide adequate findings and conclusions to permit meaningful appellate review, the case must be remanded for new or additional findings and conclusions. The district court's findings must be sufficient to resolve the issues and advise the parties, as well as the appellate court, of the reasoning process used to enter the judgment. *Gannon*, 305 Kan. at 875.

Our review of the district court's findings and conclusions shows the district court sufficiently complied with K.S.A. 2020 Supp. 60-252 to allow for meaningful appellate review. However, given most of the questions presented are now moot and we are remanding for the district court to address the remaining factual issues, we find it is unnecessary to address this claim by Legato in greater detail.

III.     THERE ARE VALID CONTRACTS BETWEEN THE CITY AND LEGATO.

The district court found Legato and the City had valid and enforceable contracts allowing the City to discharge stormwater for detention in the holding ponds based on the settlement agreements and that the easement limited the pond sizes to 17.91 acres, more or less. The district court went on to find the inclusion of the term "more or less" accounted for what a reasonable person would consider acceptable. Now Legato argues

the district court incorrectly used a reasonable person standard to expand a specific easement to 18 acres relying on the language "more or less."

Generally, there are two types of easement agreements—specific easement agreements and blanket easement agreements. The instrument creating a blanket easement does not delineate specific dimensions as it crosses the landowner's property. *Brown v. ConocoPhillips Pipeline Co.*, 47 Kan. App. 2d 26, 33-34, 271 P.3d 1269 (2012). On the other hand, a specific easement is one "where the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument." *Aladdin Petroleum Corporation v. Gold Crown Properties, Inc.*, 221 Kan. 579, 584, 561 P.2d 818 (1977).

The contracts specifically stated in great length and detail the metes and bounds description of each pond, expressly defining the boundaries of the easement agreement. Thus, the City's easement is a specific easement.

"The cardinal rule of contract interpretation is to ascertain the parties' intent. If the contract is unambiguous, we determine the parties' intent by the language of the contract alone. But if a contract has ambiguous language, we may consider extrinsic evidence to construe it." *Short v. Blue Cross & Blue Shield of Kansas, Inc.*, 56 Kan. App. 2d 914, 914, 441 P.3d 1058 (2019). If the four corners of a contract clearly show the intent of the parties, the contract is not ambiguous. 56 Kan. App. 2d at 929. The doctrine of reasonable expectations and the rule of liberal construction are only used when a contract is ambiguous. 56 Kan. App. 2d at 922.

There is no genuine issue of material fact as Legato and the City agreed to a specifically defined easement of 17.91 acres, more or less. The easement agreement is unambiguous as it defines the boundaries of the easement within each pond area to 1/100th of an acre. The four corners of the contract show Legato's intent to convey a very

16

specific amount of acreage to the City through an easement despite the "more or less" language. The district court's reasoning to expand the easement to 18 acres is not supported by the specific language of the easement. If the parties intended to convey 18 acres within the easement agreement, the four corners of the contract would so provide. We find the district court correctly determined the parties have a contract but reverse the district court's finding the "more or less" language expanded the easement to 18 acres.

*Are the parties fulfilling their obligations under their contracts, if any?*

The district court determined Legato and the City are fulfilling their obligations under their contracts because the City has not exceeded the boundaries of the easement agreement and no taking has occurred. The district court clarified the issue as to whether the parties have lived up to their maintenance obligations was still outstanding; therefore, that issue is not before us. Legato argues the district court erred in finding the parties are fulfilling their contractual obligations, asserting the district court erred in making this finding without allowing the parties additional time for discovery and to brief the issue. We agree fact questions remain on whether the parties are meeting their respective obligations under the easement and settlement agreements.

In conclusion, we find Counts 1, 3, 5, 6, 9, 12, and part of 13 are moot because the City has ordered Ordinance No. 19-05 (RZ18-0021), the ordinance at issue, not to be published and has withdrawn its approval of the Mentum Development final stormwater management plan. The district court granted Legato judgment on Count 2, and it is now final. The district court also noted the judgment entered did not apply to Count 7, which was reserved by the parties for resolution later, and Count 11, which was voluntarily dismissed by Legato. The district court also reserved certain counterclaims by the City for resolution later. As to Counts 4, 8, 10, and part of 13 as described above, we find factual questions remain, which the district court must address as the fact-finder.

Affirmed in part, reversed in part, and remanded with directions.