NOT DESIGNATED FOR PUBLICATION

No. 123,829

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
J.K., K.K., and L.G.,
Minor Children.

MEMORANDUM OPINION

Appeal from Rice District Court; STEVEN E. JOHNSON, judge. Opinion filed October 1, 2021. Affirmed.

*Richard Boeckman*, of Boeckman Law Office, of Great Bend, for appellant natural father.

*Remington S. Dalke*, county attorney, for appellee.

Before ATCHESON P.J., BRUNS and ISHERWOOD, JJ.

PER CURIAM:  Father appeals the decision of the Rice County District Court terminating his parental rights to three children. Notwithstanding some procedural wrinkles in the district court, we find sufficient evidence supported the determination based on Father's failure to take any meaningful steps to meet the needs of the children for more than a year after the State initiated this action. We, therefore, affirm the termination order.

FACTUAL AND PROCEDURAL HISTORY

The children, all boys, were taken into emergency custody in late August 2019 based on obvious signs of neglect. At the time, L.G. was about five years old; K.K. was about four years old; and J.K. was about two years old. L.G. had not been picked up at

the end of the school day, so someone at the school contacted the authorities. A sheriff's deputy responded and saw that L.G. appeared to be unkempt and wore ill-fitting clothes and shoes. A family friend took L.G. home. The deputy and a caseworker from the Kansas Department for Children and Families went to Father and Mother's house. Neither was there. The children had been left in the care of a man the deputy knew to be a drug abuser, and he appeared to be under the influence at the time. K.K. and J.K. had numerous bug bites and what appeared to be dog bites. L.G. also had bug bites. The house was strewn with trash and other debris. Father and Mother kept 14 dogs at the residence.

The State filed child in need of care cases for each of the boys on September 3, 2019. The children were placed in DCF custody. And the children were adjudicated to be in need of care on October 30, 2019. The cases have been consolidated for proceedings in the district court and on appeal. A local social service agency set up a family reintegration plan outlining various tasks for Father and Mother to assess their needs, including mental health and substance abuse issues, and to improve their coping and parenting skills. Evidence introduced at the termination hearing indicated Father did nothing concrete to accomplish those tasks for the rest of the year and into early January 2020. He had three positive tests for methamphetamine during that time. A home inspection in the fall of 2019 showed the residence to be in disrepair. Father told the caseworker he was in the midst of remodeling. Because Father continued to test positive for drugs, he was not permitted to visit the children. Father and Mother missed meetings with their assigned case workers and did not keep in touch with the social service agency as required.

In early January 2020, Father's probation for a felony conviction was revoked, and he was first held in the Rice County jail and later in prison to serve his sentence. Although Father appeared with his appointed lawyer at the termination hearing in January 2021, he had not yet completed the sentence.

While in custody, Father did nothing to accomplish any of the reintegration plan tasks. The assigned caseworkers agreed that pandemic protocols limited Father's access to some counseling and other services but did not foreclose all avenues for progress. During his incarceration, Father had neither visits nor written or oral communication with the children.

The State filed a motion in September 2020 to terminate the parental rights of Father and Mother. The district court held a termination hearing on January 15, 2021. Shortly before the hearing, Mother voluntarily relinquished her parental rights. She is not a party to this appeal. In the same vein, Father likely is not the natural parent of L.G. and never legally adopted the child. So he probably has no parental rights to terminate with respect to L.G.—a point of abstract interest but one that has no practical effect on our determination of the case.

At the termination hearing, the sheriff's deputy and several caseworkers, among others, testified as witnesses for the State. Their testimony established what we have laid out so far. The State also requested that the district court take judicial notice of four consolidated child in need of care cases in Sedgwick County District Court involving other children of Father's. Over Father's objection, the district court took judicial notice of the order entered in those cases on January 8, 2020, finding Father unfit and terminating his parental rights. The State proffered copies of the Sedgwick County order to the district court and the lawyers, but the document was not marked or received as an exhibit and did not become part of the district court record. The State later requested the order be made part of the district court record, and Father filed a written objection to the request. The order was added to the district court record and is part of the record on appeal.

At the termination hearing, Father testified in opposition to the State's motion and told the district court he would be released from prison in May 2021. He predicted he would need another 90 days to make suitable arrangements to take physical custody of

3

L.G., K.K., and J.K. Father told the district court he is a trained mechanic and had owned a business with another man. Father testified his former business associate would take him back and help him secure suitable housing for the children. Father's benefactor did not testify at the hearing, and Father provided nothing corroborating the offer of assistance.

Father testified he had abused methamphetamine years earlier and relapsed in the fall of 2019. He told the district court he had been drug-free while he was in custody and could maintain his sobriety upon his release. Father explained he was aware of the other child in need of care cases that had originated in Republic County and were transferred to Sedgwick County. He told the district court he did not know about the termination hearing in January 2020 or that he had an appointed lawyer after the cases had been moved to Sedgwick County. Ultimately, Father told the district court he wanted a chance to pursue reintegration with L.G., K.K., and J.K. and wished to be a father to the children.

On January 21, 2021, the district court filed what it characterized as a memorandum opinion that touches on the evidence and mentions factual circumstances that could support termination without citing to specific provisions of the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., delineating recognized statutory grounds for termination. The memorandum order mentions Father's drug use, his lack of effort in undertaking any tasks in the reintegration plan, and the statutory presumption arising from a parent having been found unfit in an earlier action. See K.S.A. 2020 Supp. 38-2269(b) (statutory grounds supporting unfitness); K.S.A. 2020 Supp. 38-2271(a)(1) (presumption of unfitness). The district court also stated Father's unfitness was unlikely to change in the foreseeable future and the children's best interest would be served by termination. The district court, however, did not mention what burden of proof it applied in making those determinations. The district court directed the State to "draft a journal entry of final termination."

4

The State prepared and the district court then signed and filed on January 28, 2021, a document entitled Findings of Unfitness and Order Terminating Parental Rights that incorporates a template prepared by the Kansas Judicial Council. In that order, the district court cites two bases for finding Father unfit: (1) the failure of reasonable efforts of a public agency to rehabilitate the family, as provided in K.S.A. 2020 Supp. 38-2269(b)(7); and (2) the lack of effort on part of Father to his adjust circumstances to meet needs of the children, as provided in K.S.A. 2020 Supp. 38-2269 (b)(8). The order recites the State has satisfied its burden to prove those grounds by the clear and convincing evidence. And the order finds Father's unfitness is unlikely to change in the foreseeable future and termination is in the children's best interests. Father has appealed.

LEGAL ANALYSIS

Before turning to the specific points Father has raised on appeal, we outline relevant legal principles governing the termination of parental rights under Kansas law. A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (fundamental liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is

5

unfit by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2020 Supp. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 2020 Supp. 38-2269(b) and, when the child has been removed from the home, the additional factors in K.S.A. 2020 Supp. 38-2269(c). The district court may also turn to any of the 13 statutory presumptions in K.S.A. 2020 Supp. 38-2271 to prove unfitness. The statutory factors are not exclusive, and a single ground of unfitness is legally sufficient to terminate parental rights. See *In re K.J.S.*, No. 122,042, 2020 WL 2296913, at *3 (Kan. App. 2020) (unpublished opinion) ("The district court may consider nonstatutory grounds demonstrating parental unfitness."); K.S.A. 2020 Supp. 38-2269(b) (district court "not limited to" statutory factors in finding parent unfit); K.S.A. 2020 Supp. 38-2269(f) (single statutory factor may be sufficient for termination).

In gauging the likelihood of change in the foreseeable future under K.S.A. 2020 Supp. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2020 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the

6

termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

Although Father has not challenged the district court's best interests determination on appeal, we mention the governing standard as a matter of completeness, since it differs from the measure for unfitness. As directed by K.S.A. 2020 Supp. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. See 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan 873, 893, 424 P.3d 515 (2018); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

On appeal, Father challenges the district court's January 21 memorandum order ostensibly because it was not and could not have been incorporated into the January 28 findings and order terminating his parental rights. He also disputes the bases for unfitness identified in the January 21 memorandum order. Father independently contends the record evidence supports neither the two bases for unfitness the district court specifically identified in the January 28 termination order nor that any unfitness would persist for the foreseeable future.

7

Father's procedural objection to the January 21 memorandum order misses the mark. A final dispositive decision, whether characterized as an order or judgment, may consist of more than one document. For example, in a civil case, a district court may enter an order finding a defendant liable and a later order awarding damages. Together, they compose a final, appealable judgment. See K.S.A. 2020 Supp. 60-254(b); see also *Virdanco, Inc. v. MTS, Intern.*, 791 P.2d 1236, 1238 (Colo. App. 1990). Similarly, appellate courts may consider oral findings made from the bench as supplementing a later, if abbreviated, written decision, as long as the two do not conflict. See *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 402, 77 P.3d 130 (2003); *Jobe v. Jones*, No. 121,345, 2020 WL 6533286, at *2 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1041 (2021). Here, the district court's January 21 memorandum was akin to a bench ruling directing the prevailing party to prepare a final judgment. Contrary to Father's suggestion, the final order did not need to explicitly state it was incorporating the earlier order by reference. On the whole, however, the better practice would call for a single, comprehensive termination order. See *In re I.A.*, No. 101,066, 2009 WL 863575, at *1 (Kan. App. 2009) (unpublished opinion).

Nonetheless, we decline to consider the grounds for unfitness the district court alluded to in the January 21 memorandum order that were not later explicitly identified in the January 28 findings and order of termination. We do so because the January 21 memorandum fails to identify the required burden of the proof—here, clear and convincing evidence—the district court applied to the evidence. When a party fails to object to a district court's findings and conclusions, we may assume the district court has "found all facts necessary to support the judgment." *Southern Star Central Gas Pipeline, Inc. v. Cunning*, 37 Kan. App. 2d 807, 817, 157 P.3d 1120 (2007). Likewise, we typically presume a district court has applied the correct burden of proof absent a contrary showing. *State v. Gideon*, 257 Kan. 591, 615, 894 P.2d 850 (1995); *Hildenbrand v. Avignon Villa Homes Community Association, Inc.*, No. 120,245, 2021 WL 137339, at *6 (Kan. App. 2021) (unpublished opinion).

8

We depart from those usual rules because the burden of proof here is more stringent than the usual civil standard. And it gives us pause to presume the district court applied an uncommon, though legally required, standard when the January 21 memorandum order contains no such recitation. Our discomfort escalates because the district court's ultimate decision irrevocably terminated a fundamental right and a constitutionally shielded relationship between parent and child. We, therefore, confine our review to the two statutory grounds of Father's unfitness the district court expressly identified in the January 28 findings and order of termination. That order explicitly states and imposes the clear and convincing burden of proof on the State. We have additional reservations about the district court's reliance on the Sedgwick County District Court termination order and the statutory presumption of unfitness in K.S.A. 2020 Supp. 38-2271(a)(1), but they subsumed in our broader decision to rely on only the January 28 findings and termination order.

The bases for unfitness outlined in K.S.A. 2020 Supp. 38-2269(b) and (c) tend to overlap and in many cases the same facts will support more than one. We nominally discount Father's unfitness under K.S.A. 2020 Supp. 38-2269(b)(7) related to the failure of a reasonable plan for family rehabilitation and reintegration. We do so not because we perceive any shortcomings in the plan or the social service agency's efforts that were within its control. But the testimony showed that those efforts were in some ways curtailed because of various pandemic protocols, particularly ones imposed by the correctional facilities where Father was confined from early January 2020 on. We see this as a concession to Father that he probably should not get as a strict legal matter but which we make more by way of giving him every consideration.

Turning to the ground of unfitness outlined in K.S.A. 2020 Supp. 38-2269(b)(8), we find ample evidence to support the district court's finding that Father did not and would not adjust his circumstances to meet the needs of the children. The evidence

9

established Father undertook no substantive steps between September 2019, when the State filed these proceedings, and January 2020, when he was jailed on the probation violation, to reintegrate with the children to meet their overarching need for an intact, functioning family unit. Father pursued none of the tasks the social service agency identified for accomplishing that goal and essentially ignored the agency altogether. Moreover, Father was actively using methamphetamine during that time and refused to seek treatment. His drug abuse created a bar to any visitation with the children. Father's limited contact with the social service agency showed that he and Mother had failed to make their home suitable for the children during the fall of 2019. Father attributed the condition of the dwelling to incomplete remodeling.

After Father was incarcerated, his apparent indifference continued. To be sure, there was less Father could do behind bars to work on the reintegration plan. But, again, the evidence shows he did nothing. Father had no contact in any fashion with L.G., K.K., and J.K. from late August 2019, when they were taken into protective custody, through the termination hearing in January 2021, and he made no demonstrable effort to reestablish any sort of contact with them.

In sum, the evidence supports the district court's conclusion, consistent with the clear and convincing standard, that at the time of the termination hearing in January 2021 Father was unfit under K.S.A. 2020 Supp. 38-2269(b)(8).

On appeal, Father also argues the State presented insufficient evidence to show that any condition of his unfitness would persist for the foreseeable future. We are unpersuaded. At the termination hearing, Father testified he would be released from prison about five months later. Essentially, he would have to start from scratch in working on a monitored reintegration plan. Father estimated he would require three more months to establish a residence and employment sufficient to take custody of the children. But that was no more than wishful thinking. He offered nothing to back up his

10

claimed access to work and suitable housing. He explained away his drug abuse in late 2019 as a relapse. But he presented no tangible evidence to suggest he wouldn't revert to the same addictive behaviors upon his release. He had not completed a verified substance abuse evaluation, let alone any sort of treatment.

Particularly taking account of child time; the ages of L.G., K.K., and J.K.; and how long they had already spent in DCF custody; the district court fairly concluded Father would not adapt his conduct to meet their needs and to parent them even at a minimally competent level within the foreseeable future. The younger children, in particular, had been wards of the State for a large portion of their lives. In short, a reasonable fact-finder could conclude to a high probability that Father's unfitness would persist for an extended period exceeding the foreseeable future for young children.

We briefly mention the district court's finding that the children's best interests supported termination. Father does not contest the conclusion. We would review that determination for abuse of discretion based on a preponderance of the evidence standard. Here, it's far from clear Father ever adequately parented the children; he plainly wasn't in late summer 2019. The children were obviously neglected when they were taken into State custody. Father had no contact with the children for almost a year and a half after that—through the termination hearing—and never even explored taking any steps to reestablish contact with them. The children apparently have done reasonably well in their DCF placements. Those circumstances dispel any possibility of reversible error on the best interests requirement for termination.

Affirmed.