No. 32,935

LENORE E. CRAWFORD, *Appellee*, v. CHARLES A. FRAZEE, HOMER JACOBS, CHARLES E. STAMBACK and SHERMAN TROWBRIDGE, *Appellants.*

(58 P. 2d 1141)

Opinion filed July 3, 1936.

*Claude I. Depew, W. E. Stanley, Sidney J. Brick* and *Gene G. Coombs,* all of Wichita, for the appellants.

*O. W. Helsel* and *J. R. Mayall,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for trespass and damages to 84.8 acres of land in Valley Center township, Sedgwick county, owned by the plaintiff.

Three of the defendants are the individuals who constitute the township board and are ex officio the board of highway commis-

sioners of Valley township. The fourth defendant, Trowbridge, is the township road overseer.

Some thirty-five years ago a shallow drainage ditch had been constructed diagonally across plaintiff's land. The land thereabout is flat, and the ditch was designed to drain a considerable territory from the borders of Harvey and Sedgwick counties several miles northwest and running southeastwardly to a confluence with the Arkansas river. That old ditch was so shallow that farming operations across it were feasible, as if the ditch did not exist.

The long way of plaintiff's land lies east and west. Its western border is a township road running north and south and constituting the township line. East of it is Valley township; west of it is Eagle township. There is a low place in this township road on the west side of the plaintiff's land which is frequently impassable in wet weather.

For several years prior to the origin of this cause of action the subject of widening and deepening this thirty-five-year-old ditch to improve its capacity to drain the territory it had been designed to serve was the subject of neighborhood discussion. Apparently a project to accomplish that purpose was on foot in 1929. Plaintiff's parents, who then owned the land, were hostile to that project, and the township board instituted proceedings in court to restrain them from interfering with the proposed widening and deepening of the ditch. About that time one of these defendants, Homer Jacobs, had a conversation with plaintiff's father, in which Jacobs told the latter that he, Jacobs, was going to stop him from farming across the ditch. That injunction case was tried; the injunction prayed for was denied; and the action dismissed.

Early in 1934 defendants determined to open and widen the old drainage ditch. They consulted with the county engineer, and the county surveyor set the stakes. The three defendants who constituted the township highway commission and township board ordered the road overseer, Trowbridge, to do the work. He hired about forty "relief" workers, procured a tractor, grader, and other requisite machinery, entered plaintiff's premises and widened and deepened the old ditch across her land, piled the dirt on the sides thereof, and within a few days the work was accomplished. The reconstructed ditch is thirty feet wide. Including its "spoil banks" a diagonal strip of plaintiff's land forty-five to fifty feet wide is taken out of cultivation; in wet season these "spoil banks" hold the water on

plaintiff's land which formerly drained into the old ditch. The reconstructed ditch cuts plaintiff's land into two irregular tracts, one of which can only be reached by a long and circuitous route. The subsoil thereabout is alkaline, and the soil taken out of the ditch and placed on spoil banks is alkaline and barren.

The separate answers of defendants pleaded that the deepening of the ditch across plaintiff's land was done to drain the adjacent township road, which was also a mail route; that this action was determined upon by the defendants in their official capacity and in the exercise of their official discretion and in accordance with the advice of the county engineer; and that if any injury was done to plaintiff's land, which defendants severally denied, her exclusive redress was obtainable by timely presentation of a claim against the township board as provided by the pertinent statute, R. S. 68-115.

In the course of the trial the court permitted plaintiff to amend her reply in which she had denied that defendants' acts were performed by them as township officers, by alleging that the defendant township officers had acted in bad faith.

The jury returned a verdict for $750 in favor of plaintiff, and answered certain special questions, to which we must give space:

"1. If you allow damages, state for what cause you allow damages. A. (1) Restoration of land occupied by ditch and bank; (2) Loss of production of said land from digging of ditch until production returns to normal; (3) Loss of crops on land on which water was held by spoil banks.

"2. If you find that any damage complained of by plaintiff is permanent, then state upon what fact or condition you base such finding. A. ———

"3. If plaintiff's land was restored to its original condition, would the water reaching the north-and-south highway flow across plaintiff's land in time of heavy rains, along the line of the ditch complained of? A. No.

"4. If you answer question number 3 'No,' then state where it would lodge or flow? A. On land and in road ditch to southwest of ditch complained.

"5. Did the defendants act with reasonable care and judgment in the exercise of their duties for the protection of the road? A. No.

"6. If you answer question number 5 'No,' then state in what respect each defendant failed to do so. A. The four defendants failed to open ditches so they would drain the road; and failed to locate ditch in a place so as to do as little damage to plaintiff's land as possible.

"7. Did the defendants cause the work to be done under the belief that they had a legal right to have the work done? A. No.

"8. If you allow actual damages, state what they consist of and the amount allowed for each item thereof. A. Restoration of land, $200; loss of production of land under ditch and bank until land returns to normal production, $300; loss of crop on land on which water was held by spoil banks, $250."

The trial court struck out the item of $250 for the loss of crop, etc., and entered judgment for $500 in favor of plaintiff.

Defendants severally appeal, urging objections to the judgment. They first contend that the demurrer to plaintiff's evidence should have been sustained. Their counsel declare that the record does not contain a single statement in the evidence which even hints at bad faith on the part of defendants. However, the want of a precise statement to that effect is not conclusive that there was an entire dearth of such evidence. The excuse or pretense that the old ditch was enlarged and reconstructed to drain the adjacent road was not established, except by the lip service of defendants and their witnesses which, of course, the jury was not bound to believe. The plat, plaintiff's exhibit No. 4, makes it rather obvious that the enlarged ditch, which enters plaintiff's land on the north at some distance from the west side and runs diagonally southeast, leaving plaintiff's land near the center of its southern border, could not well serve to drain the adjacent township road. There was testimony to that effect; and such, in effect, is the jury's special findings Nos. 5 and 6. Moreover, the jury were sent out to view this road and the ditch; and it is quite believable that such a view convinced the jury that the reconstructed ditch was manifestly designed to serve the drainage needs of a large territory and not peculiarly or particularly to drain the township road adjacent to plaintiff's land. Within the precedents cited by appellee (*Shanks v. Pearson,* 66 Kan. 168, 71 Pac. 252, and *Logerman v. Wilson,* 132 Kan. 280, 295 Pac. 674), we think the issue of defendants' bad faith was properly submitted to the jury pursuant to the fair and full instructions of the court covering that phase of this case. And this same conclusion necessarily follows on the related point urged by defendants that their motions for a directed verdict should have been sustained. Those motions were properly denied.

It is next contended that the jury's special findings were inconsistent with the general verdict; that the pleadings, proof and instructions only referred to permanent damages to be measured by the diminished value of plaintiff's land, while the special findings expressly negative permanent damages and expressly find that the damages, itemized by the jury in finding No. 8, are essentially temporary in character.

This contention is plausible, but upon careful analysis the jury's special findings will be found to be consonant with the evidence and

consonant with the general verdict. Findings No. 1 and No. 8 deal with the same subject. And it is quite apparent, we think, that special question No. 2 is left unanswered because the jury deemed its comprehensive answers to questions Nos. 1 and 8 had covered the subject included in question No. 2. There was testimony as to the probable cost of filling up the ditch and restoring the land to its former condition when plaintiff and her tenants could farm across the ditch without difficulty; and it was not at all an unfair view for the jury to take that the *permanency* of the damage would continue indefinitely (*Hall v. Galey,* 126 Kan. 699, 703, 271 Pac. 319), unless its restoration to its former condition and productivity were undertaken at plaintiff's cost. It will be noted that the jury were not asked point blank whether they found the land to be permanently damaged or not.

Defendants remind us that ordinarily the proper measure of damages to land is the difference in its fair market value before and after the damage to the freehold is committed. True. The jury were so instructed. There was a mass of evidence that the damage, thus measured, amounted to $25 per acre or more. That would be $2,120. Certainly defendants cannot complain that the jury considered the damage to be no more than $750; or about $8.84 per acre. The court cut that amount to $500, and this court can discern no just ground upon which that result can be disturbed, so far as concerns the defendants Frazee, Jacobs and Stamback. Considering separately the judgment against Trowbridge, who was merely the road overseer, he apparently did no more than obey the orders of the other defendants. This court can discover no sound reason for holding him to personal accountability, and the judgment against him should be set aside. In all other respects it is affirmed.

Judgment reversed as to defendant Trowbridge; affirmed as to the other defendants.