No. 126,102

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHAWN DROUHARD,
*Appellee*,

v.

CITY OF ARGONIA,
*Appellant*.

SYLLABUS BY THE COURT

1.

An easement holder commits a trespass by exceeding the rights provided under the easement.

2.

A plaintiff who proves trespass can recover for any loss sustained.

3.

No set measure of damages is required for a trespass claim.

4.

When a district court fashions a remedy designed to make an injured party whole, an appellate court does not determine whether the remedy is the best remedy but considers whether the remedy fails to follow the applicable law or otherwise breaches judicial discretion.

1

5.

A plaintiff who fails to prove actual loss may recover nominal damages, but a plaintiff cannot recover both actual and nominal damages for the same claim. Nominal damages are to be assessed in a trivial amount.

6.

When an aggrieved landowner has clearly defined rights under an easement that are recognized and protected by law, the district court may grant an injunction without applying the traditional four-part balancing of equities test.

Appeal from Sumner District Court; GATEN T. WOOD, judge. Oral argument held March 5, 2024. Opinion filed May 17, 2024. Affirmed in part and reversed in part.

*Robert Almanza*, of Law Offices of Robert Almanza, of Argonia, for appellant.

*Martin J. Peck*, of Wellington, for appellee.

Before GARDNER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

GARDNER, J.:  This case asks whether the City of Argonia exceeded the scope of a water easement. Shawn Drouhard's father granted the City an easement to produce and transport water on his property by wells, pumps, and lines. The City used the water for years without incident until the City installed a water vending machine (the Water Salesman) on the easement property. Drouhard then tried to preclude third-party purchasers from using the Water Salesman by placing a car in front of it, but the City towed the car. Drouhard then sued the City for trespass and for two claims of conversion—for taking Drouhard's car and taking her underground water. The district court denied Drouhard's claim for conversion of water but granted summary judgment against the City for the conversion of her car and for trespass. The district court awarded

2

Drouhard actual and nominal damages for both claims and issued a permanent injunction based on the City's trespass.

The City appeals the district court's orders granting Drouhard summary judgment on her trespass claim, awarding actual and nominal damages, and granting injunctive relief. Drouhard cross-appeals the district court's denial of her request to use a rental value approach in measuring her damages for the City's trespass. For the reasons explained below, we reverse the awards of nominal damages and affirm in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

In 2001 Shawn Drouhard's father granted the City of Argonia and its successors and assigns an easement to produce and transport water from Drouhard's property. The easement granted the City and "its successors or assigns" the right to "enter upon" Drouhard's property for these purposes: "to place, construct, operate, maintain, relocate and replace thereon, water wells, lines, pumps and appurtenances thereto, as shall be desirable for the production and transport of water on said property, together with the right of ingress and egress thereto." In exchange, Drouhard, his successors, and assigns received the right to use up to 10,000 gallons of city water per month without charge, as long as the City exercised its rights under the easement.

The City used the easement to pump water by using water lines from 2002 to 2017, without incident. But in October 2017, the City installed the Water Salesman—a coin-operated machine used to pump and sell bulk amounts of untreated water directly to the public at the pump site.

Members of the public used the Water Salesman from 2017 to 2019. Drouhard did not live on the easement property during that time but still saw big trucks hauling water

3

off her property. In 2019, Drouhard towed her inoperable car and placed it in the way of the Water Salesman to preclude purchasers from using it. Although Drouhard's car and property were outside city limits, the City issued her a parking ticket and had her car towed. Members of the public once again used the Water Salesman.

In February 2020, Drouhard sued the City, the towing company, and other parties for trespass, conspiracy, aiding and abetting, and conversion. Drouhard's two conversion claims were based on the City's taking of her car and its taking of the underground water on her property. The towing company eventually waived impound and storage costs and returned Drouhard's car to her, so Drouhard withdrew her claims against that company and the district court dismissed it from this suit.

The parties then cross-moved for summary judgment on the issue of liability on Drouhard's remaining claims of conversion and trespass. Drouhard argued that the uncontroverted facts showed that the City's installation and use of the Water Salesman exceeded the terms of the easement and constituted trespass. Analogizing the City's use of the easement to an oil and gas lease, Drouhard aptly argued "[w]hen a landowner signs an oil and gas lease permitting oil exploration and pumping, he does not thereby grant a right to the lessee to operate a gas station . . . ." As for her conversion claim, Drouhard argued that the City lacked contractual authority to remove her car, and it lacked authority to ticket or tow her car because it was parked on her property outside city limits.

The City argued that it was immune from prosecution for each claim, that the easement should be considered a blanket, rather than a specific, easement, and that the Water Salesman should be classified as a "pump, line[,] or well" permitted in the easement. The City argued against Drouhard's conversion claims as well.

4

*Summary Judgment on Liability*

The district court summarily denied Drouhard's claim of conversion of the water but granted her summary judgment on her claims of conversion of her car, and trespass. As for the trespass claim, the district court found that the City's installation and use of the Water Salesman exceeded the permissible scope of the easement so was trespassory. The district court granted Drouhard temporary injunctive relief barring use of the Water Salesman and ordered the City to file a complete accounting of all sales by the Water Salesman for purposes of determining damages at a later hearing.

As for conversion of Drouhard's car, the district court denied the City's claim of immunity. It found the City had improperly ordered law enforcement to cite Drouhard for illegal parking because the property on which the car sat was outside city limits. The district court likewise found the City had improperly directed the towing company to remove the car from Drouhard's property.

*Trial on Damages*

Drouhard did not present expert testimony at trial but relied on her own testimony to establish damages for both her conversion and trespass claims. For the conversion claim, the district court found that the fair market value of the car was $4,000 when towed and $500 when returned, so it awarded actual damages of $3,500 for the City's conversion. It also awarded nominal damages of $2.50 per day for the 1,034 days that Drouhard did not have the car, totaling $2,585 for lost use, non-access, and possible "damages" and repair.

For the trespass claim, the district court awarded Drouhard actual damages of $1,481.60. The district court also awarded nominal damages for trespass at $2.50 per day

for 1,385 days, totaling $3,462.50, and it ordered a permanent injunction barring use of the Water Salesman. The City moved to reconsider, which the district court denied.

The City does not appeal the district court's grant of summary judgment on Drouhard's conversion claim. The City timely appeals the district court's summary judgment ruling on liability for Drouhard's trespass claim, its damages awards for conversion and trespass, and its grant of injunctive relief. Drouhard cross-appeals, alleging the district court erred by denying her request to base trespass damages on rental value.

## I. THE DISTRICT COURT CORRECTLY GRANTED DROUHARD PARTIAL SUMMARY JUDGMENT ON HER TRESPASS CLAIM.

The City first argues that the district court erred in finding it liable for trespass.

*Basic Legal Principles*

This court's standard of review on summary judgment is well known:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.'" *Schreiner v. Hodge*, 315 Kan. 25, 30, 504 P.3d 410 (2022).

6

"Appellate courts apply the same rules. And if the reviewing court determines reasonable minds could differ as to the conclusions to be drawn from the evidence, it must deny summary judgment. [Citation omitted.]" *Unruh v. Wichita*, 318 Kan. 12, 19, 540 P.3d 1002 (2024).

In considering whether the district court's grant of summary judgment—or, as here, partial summary judgment—was appropriate, this court considers the evidence before the district court at the time the court granted the motion. See *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 939-40, 159 P.3d 215 (2007). Here, the parties do not dispute the governing facts. Rather, their dispute is whether the district court properly applied the law of trespass. "Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

"[A] trespass claim arises when a person intentionally enters another's property 'without any right, lawful authority, or express or implied invitation or license.' *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22, 378 P.3d 1090 (2016)." *Ross v. Nelson*, 63 Kan. App. 2d 634, 644, 534 P.3d 634 (2023). Trespass requires an "'intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter.'" *United Proteins, Inc. v. Farmland Industries, Inc.*, 259 Kan. 725, 730, 915 P.2d 80 (1996).

This dispute involves the scope of an easement. An easement holder commits a trespass by exceeding the rights provided under the easement. See *TFMCOMM, Inc. v. Dultmeier Development Co.*, No. 95,515, 2006 WL 2443940, at *2-4 (Kan. App. 2006) (unpublished opinion) (affirming district court's finding defendant trespassed where defendant intentionally built a structure on the plaintiff's property without express authority to do so under the parties' easement); see also 75 Am. Jur. 2d Trespass § 66. To determine the parties' rights under an easement, courts examine the language of the

7

easement and the extent of the dominant tenant's use of the easement when it was granted. *Potter v. Northern Natural Gas Co.*, 201 Kan. 528, 531, 441 P.2d 802 (1968); *Brown v. ConocoPhillips Pipeline Co.*, 47 Kan. App. 2d 26, 33, 271 P.3d 1269 (2012). Appellate courts exercise unlimited review over the interpretation and legal effect of written instruments, including whether a written instrument is ambiguous, and are not bound by the lower courts' interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

*The easement is unambiguous.*

The crucial language of this easement "expressly grants" to the City and "its successors and assigns" the right to "place, construct, operate, maintain, relocate and replace thereon water wells, lines, pumps and appurtenances thereto, as shall be desirable for the production and transport of water on said property, together with the right of ingress and egress thereto."

The City's overarching complaint is that the district court found the easement was unambiguous so it should have considered solely the language of the easement, yet it erroneously considered the City's past use of the easement (citing *City of Arkansas City v. Bruton*, 284 Kan. 815, 833-34, 166 P.3d 992 [2007]). But in *Bruton*, our Supreme Court noted the general rule that a court should consider the parties' use of an easement when discerning the parties' rights under the easement. See also *Brown*, 47 Kan. App. 2d at 33 ("Courts determine the character and extent of each parties' rights under the easement by examining the language of the grant and the extent of the dominant tenant's use of the easement at the time it was granted. *Cunning*, 37 Kan. App. 2d at 812."). The City focuses instead on *Bruton*'s emphasis of the well-established rule that "if a written instrument has clear language and can be carried out as written, rules of construction are not necessary. [Citations omitted.]" 284 Kan. at 829.

We need not decide whether the district court erred in its analysis. Our de novo review of the easement is unaffected by the lower courts' interpretations or rulings. *Russell v. Treanor Investments L.L.C.*, 311 Kan. 675, 680, 466 P.3d 481 (2020). We find the easement unambiguous and confine our review to the plain meaning of its language. See 311 Kan. at 680 ("'If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'").

*The Water Salesman is a pump.*

To win her motion for partial summary judgment on her trespass claim, Drouhard had to prove that the City's addition and use of the Water Salesman to her property exceeded the scope of its rights under the easement. See *Ross*, 63 Kan. App. 2d at 643 (trespass is intentional entering of another property "without any right, lawful authority, or express or implied invitation or license"); cf. *Bruton*, 284 Kan. at 833-34 (trespass claim required proof that improvements to a dike did not constitute maintenance in accordance with specific plan requirements defined in the easement and express purpose of the easement).

Because the easement allows the City to "place" or "construct" certain water-related parts on Drouhard's property, we first ask whether the Water Salesman constitutes one of the "wells, lines, pumps[,] [or] appurtenances" permitted by the easement. The City notes Drouhard's admission in her statement of uncontroverted facts that the Water Salesman is a "pump." There, Drouhard describes the Water Salesman as a point-of-sale pump, describing the machine as "a water pump that pumps water when people insert money into it. A person inserts $3 to start the pump and for every quarter you insert into it, it continues to fill." A "pump" is generally broadly defined as "any of various machines that force a liquid or gas into or through, or draw it out of, something, as by suction or pressure." Webster's New World College Dictionary 1179 (5th ed. 2014).

9

Based on Drouhard's admission and the broad definition of a pump, we find the Water Salesman is a pump as that term is used in the City's easement. Cf. *Bruton*, 284 Kan. at 846 (concluding that various definitions were broad enough to encompass the improvements that a city made to a dike within the maintenance provision of the parties' easement). We need not determine whether use of the pump solely by the City would have violated the scope of the easement, since the facts show that the Water Salesman was designed for public use and was used solely by the public.

*Water Salesman users are not the City, its successors, or assigns.*

We next ask whether the easement gives the City the right to permit the public to access and use the Water Salesman. The easement specifies that the only parties authorized to use the easement are the City and its "successors or assigns," yet the record shows that members of the public used the Water Salesman. And the City did not argue to the district court that it alone used the Water Salesman, or that the persons who did so were its successors or assigns. The City admitted in the district court that it did not have "any contracts" with persons who used the Water Salesman, and that it did not know any person who had bought water from the Water Salesman. And on appeal, the City admits that the easement is exclusive and it does not contend that the persons who purchased water from the Water Salesman were its successors or assigns.

Instead, the City invites us to find that the exclusive easement nonetheless gives the City the authority to grant "third-party access" to the Water Salesman to transport water. It argues that exclusive easements can be apportioned to others if doing so does not materially alter the scope of the easement. In support, the City references two state court decisions from other jurisdictions—*Ex parte Lightwave Technologies, L.L.C.*, 971 So. 2d 712, 715 (Ala. 2007), and *Hemmelgarn v. Huelskamp & Sons, Inc.*, 138 N.E.3d 1199, 1209 (Ohio Ct. App. 2019).

10

But the first case teaches that where an easement is created by conveyance, "'apportionability depends upon the intention of the parties to the conveyance.'" *Ex parte Lightwave Techs., LLC*, 971 So. 2d 712, 716-17 (Ala. 2007). Under that principle, an express easement may be apportioned when two conditions are met: (1) the language in the document creating the easement conveys an intention to convey or to grant the right to apportion; and (2) the apportionment is not an additional servitude. *Lightwave Technologies*, 971 So. 2d at 717. The City points to no such language in its easement granted by Drouhard and we find none.

The second case cited is broader, citing several Ohio courts finding that an easement holder may grant use of the easement to guests and invitees as long as their access and use remains reasonable and does not unduly burden the land on which the easement is located. *Hemmelgarn*, 138 N.E.3d 1199. But that court found it persuasive "that the easement language contained in the deed does not grant exclusive or limited use of the easement to the easement holders," and that the evidence showed that the third parties' use of the easement adhered to the overall purpose of the easement. 138 N.E.3d at 1209. By contrast, the easement here is exclusive and expressly permits only the City and its successors or assigns the right to use it. Successors or assigns are different, legally speaking, from guests or invitees. See Black's Law Dictionary 147 (11th ed. 2019) (defining "assignee" as "[s]omeone to whom property rights or powers are transferred by another"). And the City points to no evidence that the public's purchase of water from the Water Salesman adhered to the overall purpose of the easement. Thus we are unpersuaded to adopt and apply *Hemmelgarn*'s broad standard here.

The City's open invitation to third parties to use the Water Salesman rendered the City liable for the trespass its invitation caused. We reach this conclusion by a plain reading of the unambiguous easement. The City exceeded the scope of the easement by installing the Water Salesman and by inviting and enabling non-successors and non-assignees to use it.

11

*The material interference rule for obstruction of easements does not apply.*

The City also asserts that Drouhard's trespass claim requires proof that the City's new or additional use of the easement materially increased or created a new or additional burden on the servient estate. The City points out that the district court did not make such a finding and claims that this is reversible error (citing *Aladdin Petroleum Corporation v. Gold Crown Properties*, 221 Kan. 579, 588, 561 P.2d 818 [1977]). But as that case clarifies, this theory has no application here.

The rule of law that the City relies on applies when a servient tenant obstructs or disturbs the dominant tenant's easement:

> "28 C.J.S. Easements s 96, pp. 778-779, discusses what constitutes an obstruction:
> 'An obstruction or disturbance of an easement is anything which wrongfully interferes with the privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before. To constitute an actionable wrong it must, however, be of a material character such as will interfere with the reasonable enjoyment of the easement . . . .'" *Aladdin*, 221 Kan. at 588.

The City is the owner or holder of the easement, or the dominant tenant. Drouhard, the landowner, is the servient tenant. *Potter*, 201 Kan. at 530-31.

> "An obstruction or disturbance of an easement is something that wrongfully interferes with the privilege to which the dominant tenant is entitled by making its use of the easement less convenient and beneficial. *Mid-America Pipeline Co. v. Wietharn,* 246 Kan. 238, 243, 787 P.2d 716 (1990). However, an obstruction or disturbance of an easement is not actionable unless it is of such a material character as to interfere with the dominant tenant's reasonable enjoyment of the easement. *Aladdin Petroleum Corporation v. Gold Crown Properties, Inc.*, 221 Kan. 579, 588, 561 P.2d 818 (1977)." *Brown*, 47 Kan. App. 2d at 33.

12

The requirement of a "material" interference with the City's "reasonable" enjoyment of the easement has no application here because the City never claimed that Drouhard wrongfully interfered with the City's privilege under the easement.

Drouhard, the servient tenant, had no need to show the City materially interfered with her servient estate to prove trespass. For trespass, "the mere breaking and entering gives rise to a cause of action." *McMullen v. Jennings*, 141 Kan. 420, 426, 41 P.2d 753 (1935). Based on the undisputed facts, we agree that the City is liable for trespass for directly causing individuals not named in the easement to enter Drouhard's property.

## II.    THE DISTRICT COURT DID NOT ERR IN ITS ACTUAL DAMAGES AWARD FOR TRESPASS.

The City next challenges the damages, both actual and nominal, that the district court awarded on Drouhard's trespass claim. The district court awarded Drouhard $1,481.60 in actual damages and $3,462.50 ($2.50 per day for 1,385 days) in nominal damages.

*Actual Damages Principles*

When calculating damages for a trespass, the general rule is that a plaintiff can recover for any loss sustained. *Mackey v. Board of County Commissioners*, 185 Kan. 139, 147, 341 P.2d 1050 (1959) (in trespass action, "wrongdoer should compensate for all the injury naturally and fairly resulting from [the] wrong"); see also 87 C.J.S., Trespass § 116 ("The measure of damages in trespass actions is the sum that will compensate the person injured for the loss sustained."); Restatement (Second) of Torts § 929 (1979) (available damages include loss in value or in certain cases, the plaintiff may elect cost of restoration). See *Ross*, 63 Kan. App. 2d at 652.

13

To recover damages, there must be a reasonable basis for computation that allows a fact-finder to make an approximate estimate of the damages. Claims for damages that are conjectural and speculative cannot form a sound basis for an award. See *Peterson v. Ferrell*, 302 Kan. 99, 106-07, 349 P.3d 1269 (2015). Yet appellate courts do not reweigh evidence or pass upon the credibility of witnesses. When deciding whether the evidence is not enough to support a claim of damages because it is too conjectural or speculative, appellate courts examine the evidence in a light most favorable to the prevailing party. 302 Kan. at 106-07.

*Sufficient Evidence of Actual Damages for Trespass*

The City accurately notes that at the hearing on damages, Drouhard presented two forms of evidence to support her request: (1) proffered evidence about the rental value of a storage shed that she kept on her property and rented a portion of to her cousin; and (2) an accounting of the sales from the Water Salesman. The district court rejected Drouhard's proffer, finding the rental value approach factually inapplicable. But the district court adopted the values provided in Drouhard's accounting of the water sales to measure actual damages.

The City first challenges Drouhard's facts as insufficient and untrustworthy. But the evidence that Drouhard presented on her claim for damages was uncontradicted. Generally, uncontradicted evidence that is not improbable or unreasonable cannot be disregarded unless it is shown to be untrustworthy, and such uncontradicted evidence should ordinarily be regarded as conclusive. *Home Life Ins. Co. v. Clay*, 13 Kan. App. 2d 435, Syl. ¶ 3, 773 P.2d 666 (1989). Although Drouhard provided little evidence to support her claim, nothing suggests that Drouhard's accounting information was unreliable, since it was based on the City's own records of water sales by the Water Salesman through December 2021. Sufficient evidence thus supports the figures the district court used for its award of actual damages.

14

Drouhard adequately proved her loss. She testified that the City's trespass deprived her of the peaceful enjoyment of her property, as preserved to her in the easement. Drouhard proved her annoyance and discomfort. She testified that the wellhouse is next to her house. And although she did not live on that property, she saw strangers use the wellhouse 11 or 12 times when she was on her property working on the house to make it livable. She did not like strangers being so close to her house and pulling into her private driveway to use the Water Salesman:

> "I apologize if this sounds persnickety. It's not supposed to be. But for the public to approach this wellhouse, they have to pull into my private driveway that is not part of the easement. Now, do I care if the City uses that public driveway? Absolutely not. Because I am not persnickety. But they still have to cross my private driveway. And I don't appreciate strangers being within a football field from my windows, because I've caught strangers at my window before."

All but one of the persons whom Drouhard saw use the Water Salesman were strangers to her, and they came and went on her property without limitation. And when identifying Exhibits 7 and 8 as photos of a stranger's truck with a big water tank on her property, Drouhard volunteered, "I was very upset." Drouhard also testified that she "put up a cease and desist letter, also, because the City was . . . inviting the public on my property. And I said—and I complained quite often—why you were not following the easement."

Drouhard's act of moving her car in front of the Water Salesman provides additional circumstantial evidence of her annoyance and discomfort. She placed the car in front of the Water Salesman on purpose, to make it less convenient to access. And after the City towed that car, Drouhard asked the towing company to return her car to that same place, yet the towing company returned the car to a location where it did not block the wellhouse.

15

The evidence meets Drouhard's burden to prove by a preponderance of the evidence that she was damaged by trespass from strangers repeatedly entering her property without her consent. Actual damages for trespass were warranted.

*Correct Measure of Damages for Trespass*

The City also contends that the district court committed legal error by using an incorrect measure of damages. Appellate courts examine the correct measure of damages de novo, viewing the record in the light most favorable to the prevailing party. *Ferrell*, 302 Kan. at 106-07. The City contends that the district court should have used the difference between the fair market value of the property before and after the trespass. See *Crawford v. Frazee*, 144 Kan. 278, 282, 58 P.2d 1141 (1936); *Miller v. Cudahy Co.*, 858 F.2d 1449, 1456 (10th Cir. 1988) (explaining measure of damages for a temporary injury to real property in Kansas is the reasonable cost of repairing the property, including the value of the loss of use of the property, or the diminution of the rental value of the property).

But Drouhard did not allege any injury to her real property because of the City's installation or the public's use of the Water Salesman, which would have made this measure of damages appropriate. As the time-honored case of *Chicago, K. & W. R. Co. v. Willets*, 45 Kan. 110, 114, 25 P. 576 (1891), held:

> "'In actions for injury to real property, *where the injury is done to the realty itself*, the measure of damages is the difference in the value of the land before and after the trespass, or in some cases the amount necessary to restore the property to the condition in which it was before the trespass was committed.'" (Emphasis added.)

Yet, in a trespass action, that measure of damages is not always required. See *Mackey*, 185 Kan. at 147.

16

Still, the measure of damages was unusual for a trespass claim. The actual damages for trespass were in the same amount that the City had earned by selling water to the public from the Water Salesman. Awarding damages in the same amount as the benefit the Water Salesman conferred on the City seems more appropriate for a claim of unjust enrichment than trespass. See *Hurtig v. Mattox*, No. 117,544, 2017 WL 6542803, at *8 (Kan. App. 2017) (unpublished opinion) (the measure of damages in a claim of unjust enrichment focuses upon the amount of benefit to the defendant which would be unjustly retained); *In re WorldCom, Inc.*, 320 B.R. 772, 781 (Bankr. S.D.N.Y. 2005) (applying Kansas precedent in finding a defendant's benefit from trespass is not relevant when measuring damages suffered by the plaintiff), *aff'd* 339 B.R. 836 (S.D.N.Y. 2006), *aff'd* 546 F.3d 211 (2d Cir. 2008).

But there is no set measure of damages for a trespass claim. The general rule for calculating damages for trespass is that a plaintiff can recover for any loss sustained. The "'wrongdoer should compensate for all the injury naturally and fairly resulting from [the] wrong.'" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 35, 378 P.3d 1090 (2016) (quoting *Mackey*, 185 Kan. at 147). Thus, in *Ross*, 63 Kan. App. 2d at 651-52, our court recently found no error in using the "cost of removal" as the measure of damages for trespass when Nelson trespassed by installing pipes in the right-of-way and the cost of removing the pipes was the only evidence of damages presented at trial.

As in *Ross*, the district court here tailored the measure of damages to the facts before it. The City trespassed by installing the Water Salesman and inviting the public to use it. Drouhard saw trucks taking water off her property and was upset by strangers using her property. Yet no evidence showed how often or to what extent third parties had trespassed on Drouhard's land other than the City's records of the times users had bought water from the Water Salesman. The district court thus used that amount to compensate Drouhard for the injury naturally and fairly resulting to her from the City's wrong. The court awarded the funds from the Water Salesman as actual damages to compensate

17

Drouhard for her loss based on the number of times that strangers had trespassed on her property, not to prevent the City from being unjustly enriched. This distinguishes this award from the typical unjust enrichment award, although it is in the same amount.

When, as here, a district court fashions a remedy designed to make an injured party whole, an appellate court does not determine whether the remedy is the best remedy but considers whether the remedy fails to follow the applicable law or otherwise breaches judicial discretion. *Ferrell*, 302 Kan. at 106. See *In re Conservatorship of Huerta*, 273 Kan. 97, 99-100, 41 P.3d 814 (2002) (quoting *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 10, 823 P.2d 782 [1991]). Under the unusual circumstances noted by the district court, we find no error of law in the measure of actual damages for the City's trespass.

III.    THE DISTRICT COURT PROPERLY DENIED DROUHARD'S REQUEST FOR RENTAL VALUE AS THE MEASURE OF TRESPASS DAMAGES.

We detour to address Drouhard's cross-appeal because it also alleges that the district court erred in its measure of actual damages for trespass. She contends that her actual damages for trespass should be $2,400 per year based on the fair rental value of the shed that housed the Water Salesman. We choose to address this issue on its merits, overlooking the procedural deficiencies of Drouhard's brief noted by the City.

Drouhard first relies on K.S.A. 58-2520, which states that an "occupant without special contract, of any lands, shall be liable for the rent to any person entitled thereto." Drouhard then summarily claims that "[a]n occupant without a contract would include a trespasser like the City," thus the City is liable for rent. But Drouhard did not make any argument under this statute to the district court, so this claim is unpreserved.

And this argument fails on its merits as well. This statute is part of the Residential Landlord and Tenant Act, so likely relates to tenancy at sufferance or hold-over tenants,

18

unlike the City. As an easement holder, the City is not an occupant or tenant as defined in the Act and does not pay "rent" to Drouhard. See K.S.A. 58-2543(o) (defining "'[t]enant'" as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others"); K.S.A. 58-2543(j) (defining "'[r]ent'" as "all payments to be made to the landlord under the rental agreement, other than the security deposit"; (k) (defining "'[r]ental agreement'" as "the terms and conditions concerning the use and occupancy of a dwelling unit and premise"). This statute does not apply to this easement case.

But Drouhard also relies more generally on tort law (citing *Gross v. Capital Elec. Line Builders*, *Inc*., 253 Kan. 798, 805, 861 P.2d 1326 [1993])*.* That case cites the general rule that "'"the measure of damages for wrongfully depriving the plaintiff of the use of his property is the rental value or the reasonable rental value of the use of the property during the time he is deprived thereof." (52 American Jurisprudence, 874, Section 49.)'" 253 Kan. at 803-05. The City properly distinguishes this case, emphasizing that *Gross* did not deal with excessive use of an easement. We add that the court in *Gross* based its determination on the "extent of the trespass" and facts significantly different than ours. 253 Kan. at 805. Drouhard did not live on the property when the public used her driveway to access the Water Salesman, and she did not allege that the public's use of the Water Salesman barred her from using her property.

Drouhard cites two other opinions affirming awards based on fair rental value. *McCullough v. Lukens*, No. 61,663, unpublished opinion filed July 8, 1988 (Kan.); *Farmers State Bank v. Randall*, No. 79,487, 1999 WL 35814176 (Kan. App. 1999) (unpublished opinion). Yet Drouhard fails to show us that these are easement cases or that they find that the measure of damages in an easement case must be based on rental value. These cases do not persuade us that the district court should have used rental value as its measure of damages.

19

The district court aptly explained why it rejected Drouhard's proposal to use rental value to measure damages for trespass. It reasoned that (1) the Water Salesman was attached to the wall of a preexisting structure on the easement and did not use any more footage than that permitted by the easement; and (2) the Water Salesman, per the City's accounting, was used only 44 times, a "far cry" from the consistent use of one's shed to store property. These are good reasons not to use rental value as the measure of damages.

Although Drouhard's testimony on the fair rental value of the City's "expanded use of the easement" was uncontradicted, we disagree that this had to be the measure of damages. Had Drouhard proved that the installation of the Water Salesman required a greater footprint than did the easement, or that the shed housing the Water Salesman had not been previously constructed to hold the equipment necessary for the City's proper use of the easement, or that the installation or use of the Water Salesman otherwise deprived Drouhard of the use of her property, rental value may have been the most appropriate measure of damages. But based on the uncontroverted facts, we cannot find that the district court's consistent refusal to use this measure of damages fails to follow the applicable law or otherwise breaches judicial discretion. *Ferrell*, 302 Kan. at 106. We thus deny Drouhard's cross-appeal.

IV.    THE DISTRICT COURT ERRED BY AWARDING NOMINAL DAMAGES FOR TRESPASS.

We return to the City's appeal. The City next claims that the district court's "nominal damages" award for trespass is not nominal but compensatory, as shown by the district court's statements when granting the award. It also claims that the award is excessive and disproportionate to the amount of actual damages, as the district court awarded nominal damages of $2.50 a day for 1,385 days, totaling $3,462.50, for the City's trespass, while its actual damages award for that same claim was $1,481.60.

20

"From every direct invasion of the person or property of another, the law infers some damage, without proof of actual injury." *Longenecker v. Zimmerman*, 175 Kan. 719, 721, 267 P.2d 543 (1954). Thus a trespass plaintiff who can show no actual loss may still recover nominal damages. *Gross*, 253 Kan. at 800. This is true even if the plaintiff benefitted from the defendant's act. But nominal damages are not a measure of damages suffered by a party. "Nominal damages, as opposed to pecuniary damages, are awarded when the plaintiff's evidence fails to show an actual monetary amount of loss, even though there has been a real injury or technical violation of a legal right." *Newton v. Am.'s Tele-Network Corp.*, No. 84,575, 2000 WL 36746640, at *2 (Kan. App. 2000) (unpublished opinion); *Meinhart v. Farmers State Bank*, 124 Kan. 333, 338, 259 P. 698 (1927). This is underscored by the definition of the term "nominal damages":

> "A trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated.
>
> . . . .
>
> "'Nominal damages are awarded if the plaintiff establishes a breach of contract or a tort of the kind that is said to be "actionable *per se*" but fails to establish a loss caused by the wrong.' . . . S.M. Waddams, *The Law of Damages* 477-78 (3d ed. 1997)." Black's Law Dictionary 490-91 (11th ed. 2018).

So nominal damages are appropriate only when a plaintiff fails to prove actual damages. Drouhard proved actual loss yet shows us no case holding that a plaintiff may receive both actual and nominal damages for the same claim.

We also agree with the City that the district court's award of $3,462.50 is not nominal in amount. Nominal damages are to be assessed in a trivial amount. "While nominal damages are awarded without proof of actual injury, they imply the smallest appreciable quantity, with one dollar being the amount frequently awarded. [Citations omitted.]" *Kraisinger v. Liggett*, 3 Kan. App. 2d 235, 238, 592 P.2d 477 (1979). We are guided by our courts finding nominal damages in the amount of $200 excessive:

> "We have stated that '[nominal damages] imply the smallest appreciable quantity . . . with one dollar being the amount frequently awarded.' *Kraisinger v. Liggett*, 3 Kan. App. 2d 235, 238, 592 P.2d 477, *rev. denied* 226 Kan. 792 (1979). Because there was no credible evidence of actual damages produced at trial, defendants were entitled to recover only nominal damages. The amount of $200 is not nominal. We therefore reverse the judgment of the trial court and remand with directions to enter a judgment for the defendant in the amount of one dollar in nominal damages." *Amoco Production Company v. Morgan*, No. 65,117, 1990 WL 10859473, at *3 (Kan. App. 1990) (unpublished opinion).

See *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1264-65 (10th Cir. 2004) (McConnell, J., concurring) ("'Nominal damages are damages in name only, trivial sums such as six cents or $1.' Dan B. Dobbs, *Dobbs Law of Remedies* § 3.3[2], at 294 [2d ed.1993].").

We also agree that the district court's statements as to how it determined the amount of nominal damages show that it made this award to compensate Drouhard for her losses. The district court based the amount on Drouhard's damages for the City's "use" and "invitation" of third parties to use the Water Salesman. Such damages are not nominal, but compensatory or actual, as the City argues. Because Drouhard proved actual damages, she is not entitled to nominal damages in the amount awarded. We thus reverse the award of nominal damages for the City's trespass.

V.    THE DISTRICT COURT DID NOT ERR BY GRANTING ACTUAL DAMAGES FOR THE CITY'S CONVERSION.

The City next challenges the court's actual and nominal damages awards for the City's conversion, attacking the sufficiency and accuracy of Drouhard's testimony on the fair market value of her car.

22

*Standard of Review & Basic Legal Principles*

"Conversion is the 'unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights.' Damages are ordinarily the property's value when converted plus interest. [Citations omitted.]" *Armstrong*, 305 Kan. at 22.

"The purpose of awarding damages to an injured party is to make that party whole by restoring the party to his or her position before the injury." *Evenson v. Lilley*, 295 Kan. 43, 46, 282 P.3d 610 (2012). Generally, courts have measured damages for conversion by using the "'before-and-after rule.'" 295 Kan. at 47. "Under Kansas law, the general rule is that the measure of damages based upon a claim for conversion is the fair and reasonable market value of the property converted at the time of the conversion. *Mohr v. State Bank of Stanley*, 241 Kan. 42, 55, 734 P.2d 1071 (1987)." *Millennium Fin. Services, LLC v. Thole*, 31 Kan. App. 2d 798, 809, 74 P.3d 57 (2003).

Appellate courts apply a de novo review of the district court's legal conclusion, but we review underlying factual findings not based on stipulations or documentary evidence for substantial competent evidence. See *Evenson*, 295 Kan. at 46. "When examining whether the evidence is insufficient to support a claim of damages because it is too conjectural or speculative, we examine the record in the light most favorable to the prevailing party." *Ferrell*, 302 Kan. at 107.

*Evidence of Actual Damages for Conversion*

The City alleges that Drouhard was unqualified to estimate the fair market value of her car, was unreasonably uninformed, and improperly calculated the car's depreciation, thus the district court acted unreasonably in accepting her proposed values.

23

The district court measured the damages caused by the City's conversion by using the difference between the fair market value of Drouhard's car when taken and when returned.

> "The fair market value of converted or stolen property generally means that amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell but does not need to sell. See *State v. Hall,* 297 Kan. 709, 713, 304 P.3d 677 (2013) ('The fair market value of inventory is the price that a willing seller and a willing buyer would agree upon in an arm's length-transaction.')." *Ringneck Farms LLC v. Steuwe*, No. 121,879, 2020 WL 5268234, at *12 (Kan. App. 2020) (unpublished opinion).

Drouhard, as the moving party, had the burden to prove damages. *Cerretti v. Flint Hills Rural Elec. Co-op. Ass'n*, 251 Kan. 347, 362, 837 P.2d 330 (1992). She sought to meet this burden by testifying to the value of the car. An owner may testify to the amount paid for a property. See *Ultimate Chem. Co. v. Surface Transp. Int'l, Inc.*, 232 Kan. 727, 729-30, 658 P.2d 1008 (1983); *In re Tax Appeal of Lipson*, 44 Kan. App. 2d 515, 522, 238 P.3d 757 (2010). A property owner may also testify about the fair market value of their property based on their familiarity with the property and the values in the neighborhood. See *Doug Garber Construction, Inc. v. King*, 305 Kan. 785, 789, 388 P.3d 78 (2017).

Drouhard testified extensively to the condition of her car. She owned the car, had bought it for $3,800, and she spent around $500 on replacement parts for it shortly after she bought it. Drouhard estimated that the car was worth around $4,000 when the City had it towed. But she admitted that she had not used any formal method of valuing the car and did not know how she arrived at that price. Drouhard testified that she offered to sell the car for $500 after the towing company returned it, but her offer was rejected, and she did not offer to sell it for a lower amount. She later rejected an offer of $100 for the car.

The City notes that despite having had the car for around eight years, Drouhard did not know how many miles the car had. She explained, however, that she did not drive the car for very long—just three weeks—before it started to have mechanical issues. She also could not describe the state of the interior of the car after it was returned. She chose not to look inside but she knew that the car must have been stored outside with its windows down, given its apparently diminished state. Based on this testimony, the district court adopted Drouhard's valuations of $4,000 when it was towed and $500 when it was returned and awarded the difference—$3,500—as damages.

Drouhard's testimony could have been more informed and was "less than brimming with detail." *State v. Pullins*, No. 106,527, 2012 WL 4121116, at *2 (Kan. App. 2012) (unpublished opinion). Still, Drouhard's testimony was facially reasonable and was unrebutted, and related to the appropriate measure of damages. The City towed her car although it was on her own property and stored it outside with its windows down for 2 years and 10 months before having it returned to Drouhard. Her testimony suggests that her car sustained significant damage at the storage facility. Viewing the record in the light most favorable to Drouhard, we find her testimony provided a reasonable basis for computation which enabled the district court to arrive at an approximate estimate of her actual damages for the City's conversion of her car. See *Stewart v. Cunningham*, 219 Kan. 374, 381, 548 P.2d 740 (1976). No more is necessary.

V.    THE DISTRICT COURT ERRED BY AWARDING NOMINAL DAMAGES FOR CONVERSION.

The City separately challenges the district court's nominal damages award of $2.50 for 1,034 days ($2,585) for Drouhard's lost use, access, repair, and "damages that may have been sustained" to her car during storage. The City claims that the so-called "nominal damages" are consequential damages which require specific proof.

25

We agree. The court stated that its award was "to compensate" Drouhard for her losses despite labeling these as nominal damages. And as detailed in our discussion above of nominal damages for trespass, this amount of nominal damages is excessive and Drouhard cannot receive both actual and nominal damages for the same claim. We thus reverse the award of nominal damages for the City's conversion.

We note the City's additional argument that the district court prejudiced it by using at trial a different measure of damages than it had said it would use. But that argument targets only the court's awards of nominal damages and is thus mooted by our rulings reversing those awards.

## VI.    THE DISTRICT COURT PROPERLY GRANTED INJUNCTIVE RELIEF.

Lastly, the City contends that the district court committed legal error by granting a permanent injunction.

Appellate courts review the grant or denial of an injunction for an abuse of discretion. *Downtown Bar and Grill, LLC v. State*, 294 Kan. 188, 191, 273 P.3d 709 (2012). Typically, the party asserting the injunction error has the burden to establish an abuse of discretion. *Steffes v. City of Lawrence*, 284 Kan. 380, 393, 160 P.3d 843 (2007). A court abuses its discretion if the judicial decision is based on an error of law. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022).

The City contends that the district court abused its discretion by granting an injunction without making the required findings to support its decision. See, e.g., *Empire Mfg. Co. v. Empire Candle, Inc.*, 273 Kan. 72, 86-87, 41 P.3d 798 (2002) (finding an abuse of discretion in district court's granting injunctive relief without regard to the criteria set out in *Sampel v. Balbernie*, 20 Kan. App. 2d 527, 530-31, 889 P.2d 804

26

[1995]). In general, to obtain injunctive relief, the movant must prove four elements, known as the balancing of equities test:

> """(1) [A] substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.""" *Friess v. Quest Cherokee*, 42 Kan. App. 2d 60, 64, 209 P.3d 722 (2009).

True, the district court did not make any of these findings that are typically prerequisites for an injunction. But the City has not shown that those findings are necessary here. "Where there has been shown an ongoing or continuing violation of a landowner's rights by the construction of trespassing structures, the general rule is that legal remedies are inadequate and that injunctive relief is appropriate." *Friess*, 42 Kan. App. 2d at 65. "This principle is consistent with the general principle that legal remedies are inadequate to redress ongoing or continuing violations. See *Mid-America Pipeline Co. v. Lario Enterprises, Inc.*, 942 F.2d 1519, 1528-30 (10th Cir.1991)." *Friess*, 42 Kan. App. 2d at 65. Thus in *Friess*, the trespasser who proceeded with knowledge of its encroachment was entitled to no balancing of equities. 42 Kan. App. 2d at 67. Drouhard showed an ongoing or continuing violation of her rights by the installation of the Water Salesman and by the City's invitation for the public to use it.

In *Mid-America Pipeline Co.*, when a party trespassed by exceeding the scope of its easement, our Supreme Court found that the district court erred by using the four elements: "Since Mid-America [the aggrieved landowner] has clearly defined rights under the easement that are recognized and protected by law, the district court should not have balanced the equities." *Mid-America Pipeline Co. v. Wietharn,* 246 Kan. 238, 251, 787 P.2d 716 (1990). There, the construction of buildings on another's easement created a

27

continuing violation that did not cease with the completion of the construction, so an injunction was appropriate regardless of the balancing of equities test.

> "In establishing this exception to the general rule requiring a balancing of equities for injunctive relief, our Supreme Court considered cases from other jurisdictions that held: "'The benefit of the doctrine of balancing the equities, or relative hardship, is reserved for the innocent defendant who proceeds without knowledge or warning that he is encroaching upon another's property rights.'" 246 Kan. at 247. Where the landowner has done nothing to mislead the trespasser or has warned the trespasser that construction would violate the landowner's rights and the trespasser has actual and constructive knowledge of the terms of an express easement with clear rights, there need not be any balancing of equities before issuing a mandatory injunction. See 246 Kan. at 248. In *Wietharn*, the court stated that to rule otherwise would render the terms of the easement 'meaningless and Mid-America's rights thereunder illusory.' 246 Kan. at 250-51." *Friess*, 42 Kan. App. 2d at 66-67.

The City's installation of the Water Salesman on Drouhard's property falls within this rule. Drouhard, the landowner, did not mislead the City but warned it repeatedly that the Water Salesman exceeded the scope of the City's easement. The City had actual knowledge of the terms of the express easement agreement, thus the district court did not abuse its discretion by not balancing the equities before issuing an injunction.

The district court's award of actual damages made Drouhard whole for her previous losses, and its issuance of a permanent injunction prevented future trespass by persons seeking to use the Water Salesman. We find no abuse of discretion in its issuance of an injunction.

We affirm the district court's rulings except for its awards of nominal damages, which we reverse.

Affirmed in part and reversed in part.

28